## CARPENTER v. SYRETT.

No. 6202.   Decided July 27, 1940.   (104 P. 2d 617.)

Rex J. Hanson and Jesse R. S. Budge, both of Salt Lake City, for appellant.

H. D. Lowry and Clarence C. Neslen, both of Salt Lake City, for respondent.

LARSON, Justice.

The plaintiff brought this action to recover damages for personal injury alleged to have been sustained by her through the negligence of the defendant in maintaining an inadequate lighting system, which caused her to fall down

the stairs as she was leaving the defendant's inn. The case was tried to the court and a jury. At the conclusion of the evidence, on motion of defendant, the court granted defendant's motion for a non-suit and dismissed plaintiff's complaint and action. The question presented for review relates to that ruling.

The respondent owned and operated a two-story building known as Ruby's Inn, which is located about four miles west of Bryce Canyon, in Garfield County, State of Utah. From the 21st to the 25th of August, 1937, appellant was a registered guest at the Inn. The appellant's claim for damages against the respondent is based upon the theory that the respondent negligently caused or let the lights go out thereby causing the appellant to fall and sustain the injuries of which complaint is made. The Utah statute applicable to the present situation reads as follows:

Section 3-12-6, R. S. U. 1933:

"Every hotel shall be properly lighted, plumbed and ventilated with strict regard for the health, comfort and safety of the guests. Proper lighting shall be construed to mean both daylight and artificial illumination;   *   *   *."

The power unit to generate electric current was composed of a Diesel engine, used in the daytime, and a six cylinder motor from a Dodge truck, which was used in the evening. The lighting system would often be turned off during the day and the employee in charge of it, as well as other witnesses, testified that the lights would frequently go out.

Appellant testified that she left her room on the second floor on the morning of the 25th of August between eight and eight-thirty; that she walked to the head of the stairs "and I put my hand on the post and went to take a step and the next thing I was rolling. The lights went out and everything was befuddled and everything went dark and I found myself rolling" (T. 54) ; "that Mr. Syrett said, 'that light would go out just as you wanted to come down the stairs' " ;

that she could not tell whether there was a light globe in the stairway at the time in question; that she did not observe whether the electric lights were on or off (60); that she was ill and had remained in her room the day before she left Ruby's Inn (63); that she left her room and started downstairs "and had my foot out to take the first step when all the lights went out and I was just feeling—" (65); that "the light was on when I put my hand on the post" (65); that as she crossed the hall there was ample light (66); that she saw the first step but "couldn't tell if I missed the step" (67); and that she could not see the step (78).

Art L. Carpenter, son of the appellant, had worked for respondent as cook from May 8, 1937, until May 6, 1938, and he testified that the lights would go out "sometimes four or five times a day" (16); that "on one occasion the light globes were blown out because too much power came to them in the kitchen and the lights automatically went out or were shut off—" (16); that there was not any indication or regularity as to when the lights would go out; that the top of the stairway would be dark when there were no lights (17); that there were not any windows in the stairway leading from the first landing to the top of the stairs; that the doors to the rooms upstairs were kept closed (19); that he had used the stairs in the daytime when the electric lights were out because he was familiar with them but that he could not see the steps at any time when the lights were out (21); that when the lights went out from the cause of running out of fuel, "they would suddenly get brighter and nearly everybody who had been there some time would say 'Oh—there goes the light out.' If it was for any other reason, it would sometimes go out quite suddenly without any warning whatever" (23); that half the time the lights would become brighter and gradually die down until they were finally out, which would take a few seconds (24); that there was not a light in the stairway (24); and that the nearest light was at the top of the stairway in the hall; and

that the lights were kept on continuously during the summer months except when there was some difficulty (25).

Guy Howell, called by the appellant, testified that he was a kitchen helper at Ruby's Inn and that several times when cleaning chickens or vegetables the lights would go out; that the lights burned most of the time during the day and would go out "around three or four times a day" (31) ; that this condition existed throughout the summer; and that when the lights would go out "sometimes they would go out gradually but other times they would go out quickly" (32).

Maiben Johnson, who was an employee at the time, was in charge of the lighting plant. He testified that the lights would be extinguished in the building because "lots of times they were shut off to change oil in the machinery, and sometimes run out of fuel or gas and sometimes there may be some minor thing in a mechanical way would go wrong" (38) ; that the lights would be extinguished three or four times a week (39) ; that the lights would go out unexpectedly (40) ; that there was a 50 watt light five feet south of the south side of the stairway; that when the lights were off during the daytime he could "distinctly see every step from the top down without any difficulty" (43) ; that when there was motor trouble the lights would go out gradually (44) ; that the lights would go out immediately only when the switch was pulled; that often the lights were voluntarily turned off during the day, usually in the middle of the day but never before 9 o'clock A. M. (46) ; and that he never saw the lights go out suddenly unless the switch was pulled (50).

After appellant had introduced her evidence, respondent moved for a non-suit upon the following grounds: (1) That plaintiff had failed to prove any negligence of the defendant, and (2) That from plaintiff's evidence it appears that plaintiff was guilty of contributory negligence.

The motion was improperly granted. An innkeeper is not an insurer of the safety of his guests but owes to them

ordinary care to see that the premises assigned to them are reasonably safe for their use and occupancy. *Clancy* v. *Barker*, 8 Cir., 131 F. 161, 69 L. R. A. 653; *De Honey* v. *Harding*, 8 Cir., 300 F. 696; *Baker* v. *Dallas Hotel Company*, 5 Cir., 73 F. 2d 825; 32 C. J. "Innkeepers," § 70. It is the duty of a hotel keeper to maintain his buildings and premises in a condition reasonably safe for his guests. *Goldstein* v. *Healy*, 187 Cal. 206, 201 P. 462; *Robertson* v. *Weingart*, 91 Cal. App. 715, 267 P. 741. In the present case the questions as to whether respondent's lighting system complied with the statutory requirement of "proper lighting," as to whether the premises were reasonably safe for guests, and as to whether the lighting system, if negligently maintained, was the proximate cause of appellant's injuries, were questions of fact for the jury. The question of contributory negligence is likewise a proper matter for the jury, *Olsen* v. *Hayden Holding Company*, 92 Utah 551, 70 P. 2d 463. Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the jury. *McStay* v. *Citizen's National Trust & Savings Bank of Los Angeles*, 5 Cal. App. 2d 595, 43 P. 2d 560; *Pollard* v. *Broadway Central Hotel Corporation*, 353 Ill. 312, 187 N. E. 487. And as said by this court in *Robinson* v. *Salt Lake City*, 37 Utah 520, 109 P. 817, 820:

"If the evidence and the inferences are of the character which would authorize reasonable men to arrive at different conclusions with respect to whether all the essential facts were or were not proven, the question is one of fact and not of law. This is so, although the evidence on some points may be very unsatisfactory or doubtful."

The judgment is reversed and the cause remanded to the trial court. Costs to appellant.

MOFFAT, C. J., and WOLFE, McDONOUGH, and PRATT , JJ., concur.