PETERS, Plaintiff-Appellant, v. HOLIDAY INNS, INC., Defendant-Respondent.

Supreme Court

*No. 76–599. Argued March 27, 1979.—*
*Decided May 1, 1979.*
(Also reported in 278 N.W.2d 208.)

118

For the appellant there was a brief by *Schalmo & Congdon, S. C.,* of Brookfield, and oral argument by *Richard Congdon.*

For the respondent there was a brief by *James R. Gass* and *Kasdorf, Dall, Lewis & Swietlik,* and oral argument by *Michael J. Cieslewicz,* all of Milwaukee.

COFFEY, J. Appeal is taken from a summary judgment entered in favor of the defendant-respondent Holiday Inns, Inc., a Tennessee corporation. The defendant wholly owns the stock of M. H. I. Inc., a Wisconsin corporation that operates a motel known as the Holiday Inn West located at 201 North Mayfair Rd., Wauwatosa, Wisconsin. In the early morning hours of December 31, 1975, the plaintiff-appellant Francis J. Peters, a motel guest, was assaulted and robbed in his room. Peters commenced this action alleging the motel was negligent in permitting two intruders access to his room that resulted in his being beaten and robbed. The plaintiff and defendant concede the facts leading up to and culminating in the assault on Peters, although the plaintiff pre-

sented additional facts to the court at a summary judgment hearing.

Shortly before 3 a.m. on December 31, 1975, a car containing four males parked in front of the motel's entrance. The four men sat in the car for a short time before one of the car's occupants entered the motel lobby. The lobby is in the motel's main building, while the plaintiff's room, No. 185, is located in a separate but adjacent structure. The assailant, a former employee of the motel, was known as Elvis to the employees on duty. Upon entering the motel, he asked whether "Uncle George" was working that night and after being told he was not scheduled to work, "Elvis" left the lobby. Rather than exiting the building, the assailant entered the motel's kitchen area where he stole one of the bellboy shirts.

The activities of the four men were observed by a Wauwatosa policeman who was routinely patrolling the defendant's premises in an unmarked squad car. The officer became suspicious after seeing the man who departed earlier from the car return and then observed the auto proceed to the rear of the parking lot near the adjacent motel rooms. The patrolman then entered the motel and questioned the two employees on duty concerning their conversation with "Elvis." The employees informed him that a short time ago the patrons of Room 143 had phoned the desk to report that a man knocked on their door claiming their room phone was out of order and that he had a message for them from the desk. The patrolman, upon receipt of this information, alertly suspecting something unusual, called headquarters and requested the aid of additional squads that arrived at the scene shortly thereafter.

The imposter "messenger," after being denied entrance to Room 143, apparently proceeded to Peters' room, No. 185. The man knocked on the door and repeated the same *modus operandi*, informing Peters his phone wasn't work-

ing and that he had a message for him from the desk. The plaintiff-appellant explains that he looked through the door's one-way viewer and saw a man in the hallway wearing a bellboy's white shirt, the type worn by Holiday Inn personnel. Peters opened the door, believing the message was the 6:30 a.m. "wake-up call" he had requested. Two men pushed their way into the room and held the plaintiff at gunpoint while one of the assailants searched Peters' pants and room. They found approximately $700 in cash and a set of keys to the plaintiff's bowling alley. The intruders forced Peters to accompany them, apparently intending further criminal activity. The plaintiff was pushed into his own car and at this time the police converged upon the vehicle and the four men were apprehended at the scene.

At the time of the assault, the outside entrance to the separate structure housing Rooms 143 and 185 was neither locked, monitored by closed circuit television, nor manned by motel staff or security personnel. Further, it is not necessary to pass through the lobby before entering the building. The only security provided by the motel was a dead bolt lock on each room as well as a chain lock and a one-way viewer. It is pointed out that the hallway outside Rooms 143 and 185 was well lighted at the time of the assault. It was established by affidavit that the Inn did not employ security guards, as in the past five years there had been few incidents requiring calls to the police for help and that the police routinely patrol the motel entrance and parking lot.

On December 13, 1976, following a hearing on the defendant's motion for summary judgment, the trial court granted the motion based upon the affidavits submitted by the parties and additional evidentiary facts presented to the court at the hearing. The trial court expressed its reasoning for the decision in the following language:

"Now, plaintiff argues that he has a right to present this evidence to the trier of the fact. That is true only if

the evidence, if presented to the trier of the fact, drawing all reasonable inferences in favor of it, would sustain a verdict in favor of the plaintiff. I cannot find that it would. I find to the contrary, that it would not, and that under the circumstances present at the time and place, no more diligent or effective circumstances could have existed for the preservation, care and protection of the plaintiff than in fact existed on the occasion in question. Had the police department not been fortuitously on the premises, I could view the plaintiff's complaints with a different point of view. I think unquestionably, absent the presence of the police officers on the occasion in question, and the report of the phone call by the desk clerk to the police department, there would be presented to the jury a question of reasonable diligence."

The presence of the police is described as "fortuitous" as they were on the scene during a routine patrol of the premises. Further, their investigation was not initiated by a report from the motel personnel, but rather because of the suspicious circumstances personally observed by the Wauwatosa patrolman in the parking lot area.

Throughout this opinion we will refer to the residents of the Holiday Inn as guests of a motel or hotel interchangeably.

*Issues:*

1. What degree of care is required of a hotel or innkeeper in providing security measures to protect the personal safety of its guests?

2. Did the trial court err in granting summary judgment for the defendant based upon the conceded and additional facts presented, as well as the parties' affidavits and briefs presented?

In this case, the court is called upon to establish the standard of care to be imposed upon an innkeeper to provide adequate security measures for the safety of his guests. Prior to this decision, the court considered a restaurateur's duty to protect his customers from bodily injury as a result of a third party's assaultive conduct.

In *Weihert v. Piccione,* 273 Wis. 448, 78 N.W.2d 757 (1956), a restaurant patron was injured when an altercation broke out between other customers. *Weihert* held that a restaurant owner owes his customers the following duty of care in protecting them against bodily injury:

"... the proprietor of a place of business who holds it out to the public for entry for his business purposes (including a restaurant) is subject to liability to members of the public while upon the premises for such a purpose for bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons, if the proprietor by the exercise of reasonable care could have discovered that such acts were being done or were about to be done, and could have protected the members of the public by controlling the conduct of the third persons, or by giving a warning adequate to enable them to avoid harm." *supra* at 456.

In our mobile society, travellers carry sums of money because of necessity and the problems caused by the lack of adequate identification for cashing checks in areas away from home. Thus, innkeepers should foresee that necessarily large amounts of monies and credit cards are carried by their guests and consequently increased security is required in these days of rapidly increasing assaultive crimes. Certainly hotel patrons can expect that reasonable security will be provided, combined with the friendliness, hospitality and graciousness so widely advertised by modern hotels.

In *Osborne v. Montgomery,* 203 Wis. 223, 242–43, 234 N.W. 372 (1931), it was noted that once a legal duty has been imposed, the standard of care to be exercised is defined in the following language:

"... the degree of care which the great mass of mankind ordinarily exercises under the same or similar circumstances. A person fails to exercise ordinary care when, without intending to do any wrong, he does an act

or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject him or his property, or the person or property of another to an unreasonable risk of injury or damage."

Thus, the conduct of hotel innkeepers in providing security must conform to the standard of ordinary care. In the context of the hotel-guest relationship, it is foreseeable that an innkeeper's failure to maintain adequate security measures not only permits but may even encourage intruders to rob or assault hotel patrons. Therefore, we hold that a hotel has a duty to exercise ordinary care to provide adequate protection for its guests and their property from assaultive and other types of criminal activity. *See: Rosier v. Gainesville Inns Assoc., Ltd.,* Fla. App. (1st Dist.), 347 So.2d 1100, 1102 (1977) ; *Phillips Petroleum Co. of Bartlesville v. Oklahoma,* Fla. App. (4th Dist.), 292 So.2d 429 (1974) ; *Nixon v. Royal Coach Inn of Houston,* Tex. Civ. App. 464 S.W.2d 900, 902 (1971).

In *A. E. Investment v. Link Builders, Inc.,* 62 Wis.2d 47, 214 N.W.2d 764 (1974) the court stated that a duty of care arises under the following circumstances:

"A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs." *Id.* at 484.

Thus, in meeting its standard of ordinary care a hotel must provide security commensurate with the facts and circumstances that are or should be apparent to the ordinarily prudent person. In other words, an innkeeper's

standard of care in providing security will vary according to the particular circumstances and location of the hotel.[1]

Accordingly, as the degree of care that an innkeeper must exercise will vary in relation to the attendant circumstances, relevant factors in deciding whether a hotel has exercised ordinary care in providing adequate security are: industry standards,[2] the community's crime rate,[3] the extent of assaultive or criminal activity in the area or in similar business enterprises,[4] the presence of suspicious persons,[5] and the peculiar security problems posed by the hotel's design. A hotel's liability depends upon the danger to be apprehended and the presence or absence of security measures designed to meet the danger. The particular circumstances may require one or more of the following safety measures: a security force, closed circuit television surveillance, dead bolt and chain locks on the individual rooms as well as security doors on hotel entranceways removed from the lobby area.

Consequently, we apply the ordinary care standard to the facts of this case in determining whether the defendant motel was entitled to summary judgment. The

---

[1] *Dean v. Greenwich Corp.*, 193 N.Y.S.2d 712 (1959).

[2] In *Yamada v. Hilton Hotel Corp.*, 60 Ill. App. 3rd 101, 376 N.E.2d 227 (1977) a trial court's judgment in favor of the defendant hotel owner was reversed and remanded for a new trial. The appellate court found it was error for the trial court to refuse to permit the hotel security chief from testifying as to the security measures taken by other downtown Chicago hotels.

[3] *Id.*

[4] *Rosier v. Gainesville Inns Assoc., Ltd.*, Fla. App. (1st Dist.), 347 So.2d 1100 (1977) refused a directed verdict in favor of the motel noting that it was a jury question as to whether the room door locks provided by the hotel were adequate in light of prior hotel robberies within the past 5 months.

[5] *Jenness v. Sheraton-Cadillac Properties, Inc.*, 48 Mich App. 723, 211 N.W.2d 106 (1973).

plaintiff's primary contentions are that the motel was negligent in: (1) allowing suspicious persons to roam about the premises unsupervised during the early morning hours; (2) permitting the suspicious person to gain access to the Holiday Inn uniforms thus enabling the man to pose as a hotel employee; (3) as it is not necessary to pass by the motel lobby, the motel failed to provide security personnel, television monitoring equipment or other security devices, including locks on the outside doors leading to the hallways in the separated motel building where Rooms Nos. 143 and 185 were located so as to prevent ingress to all but motel patrons. The trial court described these contentions as "potentially valid" but nonetheless concluded the evidentiary facts did not raise competing inferences which would sustain a verdict in favor of the plaintiff. The trial court's rationale is stated in the following language:

"The fortuitous presence of the police department, however, establishes the fact that the plaintiff in fact was protected by the most effective means that could have prevailed; that if in fact the defendants were less than diligent with regard to the security installation, such as the stolen indicia, the security force and the building locks, in fact then, that was not causal of the plaintiff's loss because it was supplanted by the effectiveness of the fortuitous presence of the police department, and the motion for summary judgment in favor of the defendant is granted."

*Taterka v. Ford Motor Co.,* 86 Wis.2d 140, 144, 271 N.W.2d 653 (1978) recites the well established rules for deciding a motion for summary judgment:

"We have held that summary judgment may be granted where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Sec. 802.08(2), Stats. The trial court is to determine from the pleadings and affidavits whether a cause

of action is alleged and whether any material issues of fact are presented. *Krezinski v. Hay,* 77 Wis.2d 569, 572, 573, 253 N.W.2d 522 (1977). Summary judgment may be granted where there is no factual dispute or where no competing inferences arise from undisputed facts and the law resolving the issues is clear. *Lecus v. American Mut. Ins. Co. of Boston,* 81 Wis.2d 183, 189, 260 N.W.2d 241 (1977) ; *Matthew v. American Family Mut. Ins. Co.,* 54 Wis.2d 336, 339, 195 N.W.2d 611 (1972)." *Id.* at 144.

We hold, based upon the applicability of the established duty of ordinary care imposed on a hotel to provide security, and the facts and circumstances presented by the parties, reasonable persons could draw competing inferences as to whether the defendant motel provided adequate security. The present case raises a jury question as to whether or not the presence of the assailant in the motel lobby, not for purposes of renting a room, but looking for a certain motel employee at 3:00 a.m. was a suspicious circumstance requiring the motel staff to monitor the intruder's whereabouts. In *Jenness v. Sheraton-Cadillac Properties, Inc.,* 48 Mich. App. 723, 211 N.W.2d 106 (1973) a hotel patron was assaulted on the twentieth floor by a "suspicious" female who had been observed by hotel employees in the lobby one and a half hours before the incident. The *Jenness* court affirmed the trial court's verdict for the hotel guest concluding reasonable persons could differ as to whether ordinary care was exercised under the following circumstances:

"1. The female assailant had been in defendant's lobby long enough prior to the assault for one of defendant's employees, an elevator starter, to become suspicious of her. This employee reported the presence of this female to defendant's front office manager about one and one-half hours prior to the assault. The latter told the employee to advise him if this female entered an elevator. The manager suspected the female was there "to turn a trick."

"2. It was the policy of defendant to question suspicious persons in the lobby before permitting them access to the upper floors. Defendant employed a security guard but he did not report for duty until 3:00 P.M. One of the duties of the guard was to make periodic rounds of the parade area, lobby and of the floors; he often questioned people in the lobby who were suspicious either to him or to others. No one questioned this suspicious female." *supra* at 107.

Further, in this case a jury may draw different conclusions over whether the motel was compelled to have locks, security personnel or television monitoring equipment in the entranceway to the separated structure, even though the affidavits indicate the police have been sparingly called because of past security problems. It is conceivable that a jury may conclude these precautions were necessary since the presence of unauthorized persons in the separated building cannot be discovered from the lobby desk. *Brewer v. Roosevelt Motor Lodge,* Me. 295 A.2d 647 (1972) involved a hotel guest who was raped and robbed by men entering her room through an open screened window. She alleged the hotel was negligent and that jury questions were raised as to the following:

". . . the defendant's failure to provide locking devices on the screens of its motel rooms or bars on the windows, to fence off its establishment from easy access by members of the general public, to install the most modern television monitoring system inside the hallways of the motel as well as on the outside of the complex, to maintain guards on the adjacent grounds or, in the alternative, its omission to give notice to its patrons of these alleged security inadequacies, . . ." *Id.* at 651.

The *Brewer* court affirmed the verdict in the hotel's favor noting that the hotel's security omissions were not causal of her attack, since the entry of the assailants through an open window could have been prevented by the victim if she had used the safety latch provided on the window. Thus, the attack and illegal entry could not

be foreseen or anticipated by an innkeeper exercising reasonable (ordinary) care. However, in the present case, the assault and robbery could have been prevented had the intruders been denied access to the motel's hallways, or observed in the process of entering the separated motel building. The presence of security personnel, outside door locks or television monitoring equipment, we believe, would certainly discourage criminal activity within the motel.

We do not agree with the trial judge that the "fortuitous presence" of the Wauwatosa police, as a matter of law, supplants the causal relation between the absence of other security measures and the plaintiff's assault. A hotel's duty to provide reasonable security requires that preventative safety measures must be taken under certain circumstances. The police were present before and during the attack, yet this did not prevent the occurrence. This fact necessarily raises a triable issue regarding whether the fortuitous presence of the police in plain clothes and unmarked cars was the most effective security alternative commensurate with the size of the area to be protected. A jury may consider it more persuasive that security personnel in uniform patrolling the motel premises would have discouraged the assailants.

The defendant contends that its affidavits establish *prima facie* proof of the motel's compliance with sec. 160.31, Stats. 1973, renumbered sec. 50.80, Stats., by ch. 413, Laws of 1975. Sec. 160.31 precludes a hotelkeeper's liability for a guest's monetary loss if the hotel provides the following:

". . . (a) have doors on sleeping rooms equipped with locks or bolts; (b) offer, by notice printed in large plain English type and kept conspicuously posted in each such room, to receive valuable articles for safekeeping, and explain in such notice that the hotel is not liable for loss unless articles are tendered for safekeeping; (c) keep a

safe or vault suitable for keeping such articles and receive them for safekeeping when tendered by a guest. . . ."

We note that the trial court did not render any factual findings relative to the applicability of this statute to the plaintiff's $700 property loss. Therefore, although the statute may be controlling in the present case, the issue has not been tried and should be considered at the trial on remand of this action, together with the issue of the motel's liability for Peters' personal injuries.

The proof at trial may very well establish that the lower court's decision was correct. The issues in this case were sufficiently complex to raise reasonable doubts of uncertainty and a jury should have been given an opportunity to return a verdict. Hotel liability cases requiring a plaintiff to prove the innkeeper's failure to exercise ordinary care commensurate with the circumstances are difficult cases which will present our trial courts with many matters of complex factual proof that usually cannot be decided on the basis of affidavits in support of summary judgment.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.