Douglas T. MARGREITER,
Plaintiff–Appellee,

v.

NEW HOTEL MONTELEONE, INC. and
Liberty Mutual Insurance Company,
Defendants–Appellants.

No. 79–3149.

United States Court of Appeals,
Fifth Circuit.

Unit A

Jan. 19, 1981.

Christovich & Kearney, A. R. Christovich, Jr., Steven M. Lozes, New Orleans, La., for defendants–appellants.

David W. Oestreicher, II, Ralph S. Whalen, Jr., New Orleans, La., for plaintiff–appellee.

Before COLEMAN, Chief Judge, and CHARLES CLARK and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Douglas Margreiter was severely injured in New Orleans on the night of April 6, 1976. He sued the Monteleone Hotel, saying that he was taken from his room there by two men who had a key to that room, the use of an elevator and unimpeded access and exit into an alley–permitted by the Hotel's lack of care to protect its guests. The Hotel contended that Margreiter was on an intoxicated venture and met his fate outside the Hotel. The jury found in favor of Margreiter. The judgment was reduced from $750,000 to $400,000 by remittitur. We affirm.

Margreiter was chief of the pharmacy section of the Colorado Department of Social Services and was in New Orleans to attend the annual meeting of the American Pharmaceutical Association. On Tuesday evening, April 6, he had dinner at the Royal Sonesta Hotel with two associates from Colorado who were also attending the association meeting, and who had adjacent rooms at the Monteleone Hotel. Margreiter returned to his room between 10:30 and 11:00 o'clock. His friend Peebles returned to his adjoining room at the same time. His friend Bogan was to come by Margreiter's room later to discuss what meetings of the association each would attend on the following day. Skipping what the parties dispute, we know that an unconscious Margreiter was found about three hours later in a parking lot over three blocks from the Monteleone. The police who were summoned recall only that they regarded him as highly intoxicated, but they did get him to Charity Hospital. The next morning his friends learned of his predicament and had him removed to Hotel Dieu. There is no dispute but that Margreiter had been severely beaten, or that he endured great suffering and retains some effects of his injuries.

Margreiter testified that when he entered his room, he turned on the television and began to look at the program of association meetings for the following day. Shortly thereafter, two black men unlocked his door and entered. One went to the television to turn up the volume; the other struck Margreiter on the head before he could complete a telephone call for aid. Except for a few impressions of being taken down the hall into an elevator and finally out of the building into a dark alley, his memory is limited mostly to a recollection of pain. His memory is then blank until after a craniotomy had been performed and he awoke in a Denver hospital two weeks later.

The basis for the Hotel's liability is the care it owed to a guest to protect him against injury by third persons. See Nordmann v. National Hotel Company, 425 F.2d 1103 (5th Cir. 1970). The finding of the jury that the Hotel was negligent in failing to exercise reasonable care to protect the plaintiff against injury by third persons, and that this was a proximate cause of his injury, is supported by the evidence that two men with control of an elevator and a key to the room could abduct Margreiter with complete impunity. The freight elevators, which operate manually and exit in the back of the Hotel rather than into the lobby, are supposed to be shut and locked at 11:00 o'clock. The Hotel has 15 floors with 597 rooms and on this occasion was entirely full with from 1000 to 1200 guests. The one security officer had gone home ill and the only security was afforded by an assistant manager at the lobby desk and an employee who was supposed to have been at the back door which exited upon the alley. The Hotel had been given notice that there had been a 15 room burglary that afternoon at another hotel two blocks away. The Hotel had no cameras, heat sensing devices

or adequate alarms; and the evidence tended to prove that the exits were unguarded and unsupervised.

The Hotel does not defend its security devices or the care it exercised to protect Margreiter. It contends that the entire case is a sham and that the whole story of the plaintiff is not worthy of belief. It emphasizes the opinion of the policemen that Margreiter was highly intoxicated. It picks at the usual inconsistencies in testimony and the lack of lucid memory of Margreiter. It emphasizes his ability to fly back to Denver on a commercial flight and his failure to return to New Orleans to describe his assailants particularly and see to their prosecution. It concludes that Margreiter must have gone out of the Hotel on his own, become intoxicated and fallen into the wrong company.

The Hotel's contentions are addressed to the wrong arbiter. The jury has already rejected them, and the record easily supports the decision of the jury. There is no evidence that a midnight frolic was the practice or disposition of this plaintiff. His two associates who testified corroborated his activities and plans of the evening. Bogan said that he was to come by the room later. Peebles testified that the television in Margreiter's room was unusually loud. The plaintiff himself testified to the attack in his room and his abduction. The jury was entitled to believe him. We are unable to say that reasonable jurors could not arrive at that verdict, and we must therefore uphold it and the action of the trial court in refusing motions for directed verdict and for judgment notwithstanding the verdict. *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969).

The Hotel also argues that Margreiter's injuries were not so great and that he has essentially recovered, concluding: "As soon as he gets his money Mr. Margreiter will have a 'miracle at Lourdes' remission of his symptoms that 'prevent' him from working." The Hotel concludes that there is no sound basis in the evidence for the damage award of $400,000. Again, we disagree. The evidence clearly establishes the nightmarish experience of Margreiter in New Orleans and supports a finding that the consequences of those injuries do and will persist. He was severely beaten and left unconscious on the streets of the French Quarter. Three hours later he was taken to Charity Hospital and treated like a drunk. When his friends finally learned of his whereabouts, because the hospital had found his hotel key and inquired of the Monteleone office, he was found tied hand and foot on a hospital cart, showing massive contusions and lacerations about his face, bleeding at the mouth and passing blood rectally.

When he returned to Denver, surgery was necessary to remove a clot on his brain. He suffered permanent damage to his brain. The consequences were continuing headaches, traumatic neurosis, and epilepsy which is controlled only by a drug that causes side effects. A bone in his ankle was broken and efforts to repair it finally required a bone graft from his hip. His teeth were broken, causing a malocclusion. An ear drum was perforated and he now has a hearing loss and ringing in his ear. His hair suddenly turned white and his friend Bogan, who is 78 years old, declares that he hopes he never looks so old as Margreiter does at 55. There was evidence that his injuries caused a substantial loss of earnings and earning capacity. In addition to consultation with his doctors, his drug bills each month exceed $30.

We do not regard the amount of the judgment as excessive. Margreiter makes no complaint of the trial judge's action in requiring remittitur of $350,000 from the jury's award of $750,000. *See Miles v. Vicksburg Chemical Company*, 588 F.2d 512 (5th Cir. 1979); *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665 (5th Cir. 1974).

The other complaints of the appellant which were directed at matters of evidence and trial procedure were all proper rulings of the trial court and clearly within his discretion.

The judgment is AFFIRMED.