Kimberly MEESE, Plaintiff
and Respondent,

v.

BRIGHAM YOUNG UNIVERSITY,
Defendant and Appellant.

No. 17131.

Supreme Court of Utah.

Dec. 1, 1981.

H. Hal Visick, Eugene H. Bramhall, Provo, for defendant and appellant.

Jackson Howard, Richard B. Johnson, Provo, for plaintiff and respondent.

CROFT, District Judge:

This case is on appeal by Brigham Young University, defendant below, (hereinafter BYU) from a judgment entered against it in the district court following a trial by the court sitting without a jury.

The plaintiff was a student duly enrolled at BYU, having pre-registered on December 12, 1977. Included among her classes was a beginner's ski class. Prior to her attendance at BYU plaintiff had lived in Tucson, Arizona, an area of our country not known as a wintertime ski haven. Plaintiff, without prior skiing experience, attended her first ski class on January 5, 1978, consisting of a film and oral ski instruction in the BYU fieldhouse. Pursuant to a suggestion of her instructor, she rented skis and equipment from the BYU bookstore where a part-time employee, a student, made a brief adjustment on the tension of the bindings. During her second day on the ski slopes, she was skiing during "free time" and attempted a "snowplow turn." The inside edge of the left ski caught in the snow, she felt pain and fell. The resulting injury required surgery and she commenced this action on September 21, 1978.

After trial in the spring of 1980, the trial court issued a brief memorandum decision stating the court concluded BYU's agent was negligent in adjusting the bindings and that such negligence was a proximate cause of the injuries to plaintiff. The court fur-

ther concluded the plaintiff was also negligent because of inattentiveness in class concerning instructions given by the teacher and that such negligence was also a proximate cause of her injuries. The trial court apportioned the negligence 25% to plaintiff and 75% to BYU and found special damages of $1,796.70 and general damages of $17,500. Findings of Fact and Conclusions of Law were filed, and based thereon judgment was entered in the amount of $14,715.08 on May 15, 1980. BYU appealed therefrom. No challenge is made in this appeal to the finding that plaintiff was 25% negligent.

The relief sought on appeal is to have the judgment of the trial court reversed, based upon a determination by this Court that, as a matter of law, BYU is not liable to plaintiff for her injuries. In the alternative, BYU seeks to have the decision of the lower court reversed and the case remanded for a clarification of the Findings of Fact and Conclusions of Law, or for a new trial.

The thrust of appellant's contention that this Court should rule as a matter of law that liability does not exist is that the evidence is insufficient to support a finding of negligence on the part of BYU, as well as being insufficient to support a finding that such negligence, if any, was a proximate cause of plaintiff's injury. Appellant further contends that the trial court erred in failing to rule as a matter of law that plaintiff voluntarily assumed the risk of her injury.

This Court has frequently stated in cases involving challenges to the sufficiency of the evidence that the question whether the evidence is sufficient to support a finding of fact is generally a question of law for the Court to determine and that:

Where there is any fair and reasonable basis in the evidence upon which the trial court can be affirmed, it is our duty to do so.[1]

■ The trial judge in a non-jury trial is the sole judge of the credibility of witnesses and in a negligence case must determine whether a plaintiff has met the burden of proving by a preponderance of the evidence the allegations of negligence and proximate cause. In such cases conflicts in the evidence are not unusual and in *Valiotis v. Utah-Apex Min. Co.*[2] this Court long ago stated the rule of law to be applied as follows:

If the evidence, taken as a whole, be reasonably susceptible of opposite conclusions as to the existence or nonexistence of an ultimate fact, depending upon inferences to be drawn therefrom, or the weight to be given to the testimony of this or that witness, or set of witnesses, we must conclusively presume the fact to be such as will support the ruling which we are called upon to review . . . .

■ It is only where, after giving due consideration to the fact that the trial judge is better able to weigh conflicting evidence, this Court finds that the evidence be such nevertheless as to impel but one reasonable conclusion, and that as to a fact adverse to the ruling, does it become our duty as an appellate court to so declare, notwithstanding there might be some conflict in the evidence.[3]

Written findings of fact were entered by the court. In paragraph 5 thereof the court found that BYU's agents and employees were negligent in adjusting the bindings on the skis rented to the plaintiff. The bindings fasten the skier's boots to the skis and are designed to release and free the boot from the ski when certain pressures are exerted against the bindings. The bindings are designed so that the holding force of the bindings can be adjusted to fit the needs and experience of the skier.

■ A review of the transcript of the testimony given at the trial discloses that in the skiing world the adjustment of the bindings to a skier's needs and boots is the responsibility of the agency from which boots and skis are acquired, whether it be

---

1. *Foote v. Taylor*, Utah, 635 P.2d 46 (1981).

2. 55 Utah 151, 184 P. 802 (1919).

3. *Id.*

by rental or purchase, which in this case was the bookstore of the BYU. Appellant does not suggest otherwise. This responsibility imposes upon such rental agency the duty to use ordinary care commensurate with the standards of the industry in installing and adjusting the bindings, giving due regard to the factors that are relevant thereto. Such factors would include the weight and experience of the person renting the skis; the proper placement and adjustment of the bindings to the person's needs; an explanation of how to adjust the bindings to tighten or loosen them; and to employ competent persons knowledgeable about the matters involved. Any breach of that duty would constitute negligence.

 Negligence is the failure to do what a reasonable and prudent person would have done under the circumstances, or doing what such person under such circumstances would not have done. The fault may be in acting or omitting to act.[4] A corollary to that definition is that in the exercise of ordinary care, the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances.

 A review of the testimony of the plaintiff and that of Ronald Earl Beck, the bookstore employee who rented the skis to plaintiff, discloses a substantial conflict in the testimony between them as to what Beck did or did not do. The encounter between them was brief and Beck had no recollection of the transaction but did identify his handwriting on the rental agreement. One fact seems clear and that is that after Beck affixed the bindings to the skis and had plaintiff step into them, he did not have her twist or turn to see if the bindings would release under such movement. Given the circumstances that plaintiff had never been on skis before in her lifetime and so advised Beck, we believe that ordinary care would require Beck to do more than to merely fix the tension on the bindings from a chart and that he should have directed plaintiff to at least go

through the necessary motions to test the release mechanism of the bindings.

It was, of course, the responsibility of the trial court to judge the credibility of the witnesses and to determine the weight and convincing force of the testimony of each witness. In his brief memorandum decision the trial judge noted that Beck had testified he did not recall the events surrounding plaintiff's rental of the boots and skis, whereas the plaintiff had testified specifically and in detail concerning those events. The judge then stated he accepted plaintiff's version. It was his prerogative to do so and unless, as noted *supra*, we can find that the evidence is such as to compel but one reasonable conclusion adverse to the court's ruling, we must affirm the court on that ruling. We do not so find.

 Appellant also contends that the trial court erred in its finding that plaintiff carried her burden of proving proximate cause. This contention also related to the sufficiency of the evidence. The forces that are brought into play on a ski slope that result in an injury to a skier are difficult to define. Appellant contends there is no evidence in the record to establish that the injury occurred from a twisting force at the knee or elsewhere, as opposed to a simple lateral, non-twisting force directly at the knee; and that since such a twisting force is essential to create the necessary forces on the bindings to cause them to release, the evidence does not support a finding of proximate cause resulting from any negligence with regard to the bindings. A review of the testimony of Dr. Anthony Sances, an expert in the field of Biomedical Engineering which involves an application of engineering in medicine and biology, shows otherwise. He expressed the opinion that the injury occurred when the ski edge was caught in the snow and that there was sufficient force imparted through the ski to the medial ligaments to tear them. He further testified that the reason this oc-

4. Jury Instruction Forms for Utah (J.I.F.U.) § 15.1.

curred was because the bindings were either set too tight or that the toepiece was not adjusted properly so that the boot could not rotate as it should out of the ski, and that had the boot been released from the ski, plaintiff would not have sustained the injury. This is sufficient, credible, believable evidence to sustain the trial court's finding of proximate cause resulting from the negligence which that court found to exist.

Appellant further contends that the trial court erred in failing to rule as a matter of law that plaintiff voluntarily assumed the risk of her injury. In support of that contention appellant in its brief asserts that plaintiff knew that her bindings were not releasing because they did not do so at the time her teacher directed the students to endeavor to twist out of the bindings and she did nothing about it. The court found that her inattentiveness at class in this regard was negligence on her part and that such negligence constituted 25% of the causation factor. No challenge is made to the court's finding on that matter and such determination is not before us on this appeal.

What appellant is attempting to do is to have us equate contributory negligence to assumption of risk to such a degree as to have required the trial court to rule as a matter of law that plaintiff was not entitled to recover. In its brief, appellant states that plaintiff should not be heard to argue that she did not understand the dangers inherent in ski bindings which do not release during falls because "such dangers are obvious and well-known to any normal, intelligent adult."

Undoubtedly, the danger of injury in the sport of skiing is inherent in that sport. The danger of injury is inherent in driving a motor vehicle, particularly when the negligence of others becomes involved in the circumstances of the moment.

This court has ruled that the essential elements of assumption of risk are (1) knowledge of a danger and, (2) a free and voluntary consent to assume it.[5] It must be actual knowledge and it is not sufficient to say that in the exercise of ordinary care, one would know that danger exists. In the case just cited this Court said:

> The doctrine of assumption of risk in many instances overlaps into the field of contributory negligence; but it must be distinguished and applied only in the proper case, that is, when the question involves the reasonableness of plaintiff's voluntary action in the face of a known danger.

Contrary to appellant's contention, we do not believe it can be said as a matter of law that a beginning skier would have knowledge of the danger existing in the failure of the renter of skis to properly adjust the bindings, nor that after one or two uses they were not properly adjusted. The facts of this case are distinguishable from the risk confronting one in a toboggan ride, or watching a football game from along the sidelines, or using one's head as a battering ram in a football game as were the fact situations in the cases cited by appellant in its brief.

Prior to the adoption of the Comparative Negligence law [6] by the Legislature in 1973, assumption of risk was an affirmative defense which, if proven, generally precluded recovery in a negligence case. Under the act, "contributory negligence" includes "assumption of risk." In *Rigtrup v. Strawberry Water Users Ass'n*,[7] this Court stated:

> Though there have been some differences in view as to the defense of assumption of risk and its relation to other aspects of contributory negligence, it has since time immemorial been regarded as a valid defense in the law of this State. It has sometimes been said to be but a

---

5. *Johnson v. Maynard*, 9 Utah 2d 268, 342 P.2d 884 (1959).

6. Laws of Utah 1973, Ch. 209, §§ 78–27–37 et seq., U.C.A.1953, as amended.

7. Utah, 563 P.2d 1247 (1977).

specialized aspect of contributory negligence in that it can be intermingled and fused with other aspects thereof in certain circumstances. It is also sometimes said to be something separate from contributory negligence, as it undoubtedly can be in some circumstances. However, it requires but little reflection to see that where there is a known danger, the risk of which is voluntarily assumed by a party, such action may well fall within the lack of due care which constitutes negligence and also may be correctly termed an assumption of risk. If such be the situation, the party should be charged with the responsibility for his conduct, by whatever term it may be called; and the comparative negligence statute quoted above should be applied as the trial court correctly did in this case.

That our conclusion just stated is the correct one under our law is supported, not only by the reasoning just stated and the cases cited, but is made abundantly clear by the fact that the legislature, apparently in order to avoid any misunderstanding thereon, appended the last sentence as quoted above that: as used in this act, "contributory negligence" includes "assumption of the risk." That sentence indicates a clear legislative intent to recognize the doctrine of "assumption of risk" as an aspect of contributory negligence in Utah law. Therefore any attempt on our part to judicially abolish that defense would amount to a direct repudiation of the legislative expression and thus a clear usurpation of the legislative prerogative. [Cited cases omitted.]

In *Jacobsen Construction Co., Inc., et al., v. Structo-Lite Engineering, Inc.,*[8] this Court stated:

The complete bar to recovery which such conduct [assumption of risk] once constituted in a negligence action has been abolished by the Utah comparative negligence statute to avoid the harshness visited upon plaintiffs as a result of the all-or-nothing nature of the former rule of law.

\* \* \* \* \* \*

We thus hold that under our comparative negligence statute 'assumption of risk' language is not appropriate to describe the various concepts previously dealt with under that terminology but is to be treated, in its secondary sense, as contributory negligence. Specifically, and with particular reference to our comparative negligence act, the reasonableness of plaintiff's conduct in confronting a known or unknown risk created by defendant's negligence will basically be determined under principles of contributory negligence. Attention should be focused on whether a reasonably prudent man in the exercise of due care would have incurred the risk, despite his knowledge of it, and if so, whether he would have conducted himself in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the appreciated risk... Then, if plaintiff's unreasonableness is viewed to be less than that of defendant, according to the terms of the statute, "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering."

The assumption of risk concept received further consideration by this Court in *Moore v. Burton Lumber and Hardware Co.*[9] wherein it was said:

In light of the difficulties arising from the several [meanings] of the term assumption of risk, some authorities have advocated the complete abolition of the term "assumption of risk" and the utilization of other legal terminology to describe the conduct. [Citations omitted.] We agree.

In considering the *Rigtrup* decision, supra, this Court in *Moore v. Burton Lumber*

8. 619 P.2d 306 (1980).

9. Utah, 631 P.2d 865 (1981).

*and Hardware Co.,* noted that the Court in *Rigtrup* had held that assumption of risk should be treated in a comparative manner as an aspect of contributory negligence but had, nevertheless, approved the giving of instructions on both assumption of risk and contributory negligence. Concluding in Moore that instructions on both contributory negligence and assumption of risk were unnecessary in that case, the Court then ruled that:

> To the extent that *Rigtrup* is inconsistent with this opinion, it is overruled.

No longer, then, under the rulings of this Court, is "assumption of risk" to be treated separate from contributory negligence in comparative negligence cases.

If the elements of assumption of risk are proven in any given case, it might support a finding of a high degree of negligence on the part of the actor, but it must still be compared with the negligence of the opposing party by the trier of the facts. The trial court did not err in not ruling as a matter of law that plaintiff voluntarily assumed the risk of her injury.

Finally, appellant contends that the Findings of Fact and Conclusions of Law entered by the trial court are insufficient under Rule 52(a) of the Rules of Civil Procedure. It is alleged they fail to inform the appellant and this Court of the facts upon which the conclusion of negligence is predicated. Both the findings and conclusions set forth the negligent act of the defendant in its adjustment of the bindings on the skis as a proximate cause of plaintiff's injury and are adequate under Rule 52(a).

The judgment of the trial court is affirmed.

HALL, C. J., STEWART and HOWE, JJ., and J. ROBERT BULLOCK, District Judge, concur.

OAKS, J., having disqualified himself, does not participate herein; CROFT, District Judge, sat.