Barbara F. MITCHELL, et al., Plaintiffs and Appellants,

v.

PEARSON ENTERPRISES, a Utah Corporation, et al., Defendants and Respondents.

No. 18848

Supreme Court of Utah.

Feb. 5, 1985.

J. Douglas Parry, Salt Lake City, Kenneth J. Fishman, Boston, Mass., for plaintiffs and appellants.

Ray Berry, Bruce H. Jensen, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiffs appeal from a summary judgment entered in favor of defendants in an action seeking damages for wrongful death. U.C.A., 1953, § 78–11–7. We affirm.

On July 17, 1979, Donald P. Mitchell, a Delaware businessman and husband and father of the plaintiffs in this action, was murdered in his room at the Salt Lake Hilton Hotel. Mitchell had eaten breakfast with a business associate, Louis Rosenberg, in the coffee shop of the Hilton. Following breakfast, Mitchell had returned to his room on the eighth floor of the hotel to use the bathroom before beginning his business day. When Mitchell did not meet Rosenberg shortly thereafter as arranged and did not answer his phone or door, Rosenberg became concerned and asked a hotel maid to open the door to Mitchell's room. Rosenberg and the maid found Mitchell lying face down on the floor, dead. Mitchell had been shot twice in the back of the head with a .22 caliber weapon. It was generally agreed that the position of the body and the pattern of blood spatters surrounding it indicated that Mitchell had been shot where he was found, lying on the floor.

Both Mitchell's luggage and Rosenberg's, which had been left in Mitchell's room because Rosenberg was checking out, had been rifled. Mitchell's wallet was lying on one of the suitcases with the cash missing. Neither Mitchell's Rolex watch nor his credit cards were taken. There was no sign of forced entry into the room and no sign of a struggle other than scratches on Mitchell's arm in the area of his watch. Mitchell's room key was found lying in front of the bathroom door. The murderer was never apprehended.

Published deposition testimony indicated that local police officers involved with the investigation of the homicide developed several theories as to the circumstances surrounding Mitchell's death. The most prominent among these were:

1. Mitchell surprised a burglar who had entered the room with a passkey. The burglar shot Mitchell to avoid recognition and apprehension.

2. A robbery had taken place, the robber either entering the room with a passkey or surprising Mitchell in the elevator or hallway.

3. Mitchell had been executed gangland style, the killer having gained entrance to the room with a passkey or having accosted Mitchell in the hallway or elevator.

The Salt Lake Hilton Hotel is operated by Pearson Enterprises, a franchisee of the Hilton Hotel Corporation. The building consists of both high-rise and low-rise sections. The high-rise section has 10 floors, where most of the rooms are located. The total area of the hotel consists of 340 plus guest rooms,[1] 3 restaurants, 3 lounges, a lobby, a convention center, 11 entrances (9 of which were open to the public 24 hours a day), numerous stairwells,[2] elevators, and a parking lot. At the time of the murder,

there were no electronic devices, cameras, or alarms at any of the entrances, in the stairwells, or on any of the guest floors. One security guard was responsible for patrolling the entire area.

The chief of security for the Salt Lake Hilton had been a Salt Lake City police officer but had had no previous supervisory experience. He set up the security system at the Hilton with no assistance from the franchisor corporation in any form, either through manuals on security procedures or direct guidance. He made no effort to determine crime levels in the immediate vicinity of the hotel in order to tailor security procedures to these levels. Security personnel provided no procedure for controlling access to room keys or master passkeys and did not themselves supervise access to the keys. Management personnel indicated that there was no clear policy with regard to access to master passkeys and that supervision of access to all keys was minimal.

Both security personnel and general employees were hired after filling out standard application forms. Neither military nor police records were checked, and no security experience was required for security personnel. At the time of the homicide, defendants had on their payroll an employee who was on probation after arrest and conviction in connection with an attempted homicide-robbery.[3] The probationer was employed as a maintenance person and, as such, had access to all master keys at his hotel. This individual's wife was the maid on the floor where Mitchell was murdered and was in possession of a passkey to those rooms at the time of the murder.

Deposition testimony indicated that there had been previous instances of crime in the hotel, including attempted rape and theft

---

1. Each guestroom door is in an alcove recessed from the hallway.

2. These offered direct access to guestroom floors from outside without passage through the lobby.

3. Pearson Enterprises owned three hotels in the Salt Lake area: the Airport Hilton, the Salt Lake Hilton, and the Tri-Arc Travelodge. The probationer was employed by the Tri-Arc Travelodge, located half a block from the Salt Lake Hilton. Time cards indicated that this individual had punched into work the morning of Mitchell's murder, but his whereabouts could not be verified for the time of the murder.

from guestrooms and the lobby. There were also instances of "street people" entering guest floors through outside entrances and stairwells to sleep in hallways and in rooms.

Plaintiffs brought suit against defendants to recover damages for the wrongful death of Donald Mitchell, alleging that defendants were negligent in failing to provide reasonable security measures to protect the safety of their registered guests while in their rooms and in the common areas of the hotel. Plaintiffs also alleged that defendants breached implied and express warranties of safe accommodation and habitability owed to its registered guests.

Defendants filed a motion for summary judgment, asserting that defendants were not insurers of the safety of the deceased; that defendants did not breach any duty to the deceased since the murder was not reasonably foreseeable and the death was caused by the intervening independent criminal act of a third person; and that Utah does not recognize a cause of action for breach of an implied or express warranty of safe accommodation and habitability.

After a hearing on the defendants' motion for summary judgment, at which thirty depositions were opened and published, the trial court granted summary judgment in favor of defendants, finding only "that there is no genuine issue of any material fact." Plaintiffs appeal, contending that there were material issues of fact to be resolved with regard to whether defendants were negligent in providing security to their guest, Mitchell.

■ An innkeeper is not an insurer of the safety of its guests but owes to them ordinary care to see that the premises assigned to them are reasonably safe for their use and occupancy.[4] In the exercise of ordinary care, the amount of caution required will vary with the nature of the act and the surrounding circumstances.[5]

■ In the context of the hotel/guest relationship, it is foreseeable [6] that an innkeeper's failure to maintain adequate security measures not only permits but may even encourage intruders to rob, assault, or murder hotel patrons.[7] Thus, in meeting its standard of ordinary care, a hotel must provide security commensurate with the facts and circumstances that are or should be apparent to the ordinary prudent person.[8] Accordingly, the degree of care that an innkeeper must exercise would vary according to the particular circumstances and location of the hotel.[9]

The Wisconsin Supreme Court, in *Peters v. Holiday Inns, Inc.*,[10] set forth what it considered to be relevant factors in decid-

---

4. *Moore v. James,* 5 Utah 2d 91, 297 P.2d 221 (1956); *Carpenter v. Syrett,* 99 Utah 208, 104 P.2d 617 (1940). *See also Margreiter v. New Hotel Monteleone, Inc.,* 640 F.2d 508 (5th Cir. 1981); *Rosier v. Gainsville Inns Assoc.,* Fla.App., 347 So.2d 1100 (1977); *Phillips Petroleum Co. v. Dorn,* Fla.App., 292 So.2d 429 (1974); *Walkoviak v. Hilton Hotels Corp.,* Tex.Civ.App., 580 S.W.2d 623 (1979); *Peters v. Holiday Inns, Inc.,* 89 Wis.2d 115, 278 N.W.2d 208 (1979); Restatement (Second) of Torts § 314A(2) (1965).

5. *Meese v. Brigham Young Univ.,* Utah, 639 P.2d 720, 723 (1981).

6. As the Wisconsin Supreme Court said in *Peters v. Holiday Inns, Inc., supra* note 4, 89 Wis.2d at 122, 278 N.W.2d at 211:

   In our mobile society, travellers carry sums of money because of necessity and the problems caused by the lack of adequate identification for cashing checks in areas away from home. Thus, innkeepers should foresee that necessarily large amounts of monies and credit cards are carried by their guests and consequently increased security is required in these days of rapidly increasing assaultive crimes. Certainly hotel patrons can expect that reasonable security will be provided, combined with the friendliness, hospitality and graciousness so widely advertised by modern hotels.

7. *Peters, supra* note 4, at 123, 278 N.W.2d at 212.

8. "Negligence is the failure to do what a reasonable and prudent person would have done under the circumstances, or doing what such person under such circumstances would not have done. The fault may be in acting or omitting to act." *Meese, supra* note 5, at 723.

9. *Peters, supra* note 4, 89 Wis.2d at 123–24, 278 N.W.2d at 212.

10. *Supra* note 4.

ing whether a hotel has exercised ordinary care in providing adequate security: "industry standards, the community's crime rate, the extent of assaultive or criminal activity in the area or in similar business enterprises, the presence of suspicious persons, and the peculiar security problems posed by the hotel's design." [11]

The *Peters* court went on to say:

A hotel's liability depends upon the danger to be apprehended and the presence or absence of security measures designed to meet the danger. The particular circumstances may require one or more of the following safety measures: a security force, closed circuit television surveillance, dead bolt and chain locks on the individual rooms as well as security doors on hotel entrance ways removed from the lobby area.[12]

Plaintiffs rely on *Peters* and on *Walkoviak v. Hilton Hotels Corp.*,[13] to support their contention that summary judgment was improper in this case. In *Peters*, the plaintiff, a motel guest, was assaulted and robbed in his room. At approximately 3:00 a.m., the assailant had entered the motel's lobby where he had asked for a certain employee who was not there. He then entered the motel's kitchen area unobserved, where he stole a Holiday Inn bellboy shirt. He proceeded to the rooms area, which was in a separate building. Outside doors to the rooms area were not locked, entrances were not monitored by closed circuit television, and there were no security guards. It was also not necessary to pass through the lobby to enter the rooms building.

The assailant knocked on Peters' door, informed Peters that his room phone was not working and told Peters there was a message for him. Peters, after looking through the door's one-way viewer and seeing a man in a bellboy shirt, opened the door. He was then robbed and assaulted. The Supreme Court of Wisconsin reversed a summary judgment in favor of the de-

fendant hotel corporation, ruling that material issues of fact existed as to whether the defendant had provided adequate security and whether there was a causal relation between the absence of security measures and plaintiff's assault.

In *Walkoviak*, a hotel guest brought an action against the hotel for injuries caused by the criminal activities of third persons, alleging that the hotel negligently failed to provide adequate security. The plaintiff had attended a convention at the defendant's hotel and had parked his car in the parking lot owned by, and located directly in front of, the hotel. On leaving the convention and reaching his automobile, the plaintiff was accosted by two unknown assailants, beaten, stabbed and robbed. He was rendered unconscious and awoke some distance away from the hotel in his automobile on the morning of the next day. The plaintiff alleged that the hotel was negligent in failing to supply adequate protection in the form of guards or other security measures, in failing to warn the plaintiff and in failing to take other necessary steps to protect the plaintiff. The defendant filed a motion for summary judgment, contending that negligence had not been shown in connection with this incident and that the criminal attack by the unknown assailants constituted a new and independent cause totally disassociated with any act or omission on the hotel's part. The defendant therefore argued that it was absolved from any liability as a matter of law. The trial court granted the defendant's motion.

In reversing, the Texas Court of Civil Appeals stated that:

[An innkeeper] has the duty to exercise reasonable care to protect his patrons from intentional injuries caused by third persons if he has reason to know that such acts are likely to occur, either generally or at some particular time. Liability for injuries may arise from the failure

---

**11.** *Id.* 89 Wis.2d at 124, 278 N.W.2d at 212 (footnotes omitted).

**12.** *Id.*

**13.** *Supra* note 4.

of the proprietor to exercise reasonable care to discover that such acts by third persons are occurring, or are likely to occur, coupled with the failure to provide reasonable means to protect his patrons from the harm or to give a warning adequate to enable the patrons to avoid harm.[14]

In reviewing the evidence, the *Walkoviak* court found several factual questions to exist which were material to the issue of whether the defendant was negligent. Some of the evidence presented, which created the questions of fact, included the statement made by the head of the hotel's security system, indicating that he made no conscious effort to find out anything about the crime situation in the area immediately surrounding the hotel; the hotel's indication that the police were called to the hotel twice in the twelve months preceding the attack on the plaintiff due to robberies in the vicinity of the hotel; and the defendant's indication that only one security guard was on duty at the time of the attack on the plaintiff.

The Texas court concluded that the evidence was sufficient to raise issues of fact as to whether the hotel conducted its security practices in accordance with the standards required of a reasonable and prudent innkeeper in the same or similar circumstances and that such issues are to be resolved by the trier of fact and are not proper issues to be determined as a matter of law in a summary judgment proceeding.[15]

As in *Peters* and *Walkoviak*, plaintiffs have elicited sufficient evidence through the published depositions to raise material issues of fact with respect to whether defendants were negligent in providing adequate hotel security. This evidence includes but is not limited to: hiring of employees without regard to guest safety (including ex-convicts and inexperienced se-

curity personnel); lack of guidance by the franchisor and the minimal capability of the franchisee to set up an adequate security system for the hotel as built and laid out; minimal supervision or control by anyone in the hotel's management structure over room keys and passkeys; twenty-four hour access to hotel and guest floors through multiple unsecured and unsupervised doors and stairwells; no surveillance devices of any kind; insufficient security personnel for structure size and complexity; apparent lack of response by security personnel to prior instances of crime in the hotel; and failure to investigate levels of criminal activity in the vicinity so as to tailor security procedures to that level.

■ However, the inquiry does not end there. Demonstrating material issues of fact with respect to defendants' negligence is not sufficient to preclude summary judgment if there is no evidence that establishes a direct causal connection between that alleged negligence and the injury. Certainly, ordinarily the issue of proximate cause is a matter to be submitted to the jury for its determination.[16] However, in appropriate circumstances summary judgment may be granted on the issue of proximate cause.[17]

In this case, plaintiffs failed to make out a case based on the specific acts of alleged negligence because there is an absence of proof that the alleged negligence was the proximate cause of Mitchell's death.

■ The standard definition of proximate cause is "that cause which, in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in op-

---

14. *Id.* at 625.

15. *Id.* at 626.

16. *Thompson v. LeGrand Johnson Constr. Co.,* Utah, 688 P.2d 489, 491 (1984); *Watters v. Querry,* Utah, 626 P.2d 455, 457–58 (1981). *See also*

*Christensen v. Shear,* Utah, 688 P.2d 467, 468 (1984).

17. *Jensen v. Mountain States Tel. & Tel. Co.,* Utah, 611 P.2d 363, 365 (1980).

eration the factors that accomplish the injury." [18]

■ It was plaintiffs' burden to show that defendants' conduct was a substantial causative factor that led to Mitchell's death.[19] The fact that the instrumentality which produced the injury and subsequent death was the criminal conduct of a third person would not preclude a finding of proximate cause if the intervening agency was itself a foreseeable act.[20]

In both *Peters* and *Walkoviak*, evidence was adduced which raised a material question whether the absence of security measures in each case set in motion the factors which caused each respective injury. In *Peters*, stipulated facts indicated that the assailant gained entrance to Peters' room wearing a stolen shirt and posing as a Holiday Inn bellboy. In *Walkoviak*, the plaintiff was assaulted by unknown persons in the hotel parking lot. The plaintiff there introduced evidence that the hotel had failed to provide adequate security measures. In both these cases, the individuals assaulted could testify concerning the exact circumstances of the assault. In each case, reasonable minds could differ concerning the question of whether inadequate security was or was not the proximate cause of each injury.

■ However, in this case there is no direct evidence linking Mitchell's death with the alleged inadequate security measures at the Hilton. There is no direct evidence of any kind as to how or where the murderer first encountered Mitchell. Similarly, there is no direct evidence as to how the murderer entered Mitchell's room or whether he had a prior relationship with Mitchell. Mitchell himself obviously was unavailable to testify, and there were apparently no eyewitnesses other than the unknown murderer. The fact that there was no evidence of forced entry into Mitchell's room could be probative of entrance by a person using an unauthorized master or room key. However, it could also be probative of entrance, at Mitchell's invitation, by a friend or colleague. Any supposition, therefore, as to the manner of entrance to Mitchell's room or the identity of the assailant would be totally speculative. A jury cannot be permitted to engage in such speculation.

As this Court said in *Staheli v. Farmers' Cooperative of Southern Utah*:[21] "When the proximate cause of an injury is left to speculation, the claim fails as a matter of law."[22] Therefore, since any attempt to relate Mitchell's death to the alleged negligence of the hotel in providing adequate security would be completely speculative, summary judgment was proper on that cause of action.

Plaintiffs' second point on appeal is that summary judgment was improper on the issue of whether defendants breached express and implied warranties of safe accommodation and habitability owed to their guest, Donald Mitchell.

Plaintiffs rely on the following statement, apparently taken from a Hilton Hotel in-room brochure, to support the contention that defendants made an express warranty

---

18. *State v. Lawson*, Utah, 688 P.2d 479, 482 and n. 3 (1984). *See also Watters, supra* note 16, at 460; Jury Instruction Forms, Utah, # 15.6 (1957).

19. *See Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 429 N.Y.S.2d 606, 614, 407 N.E.2d 451, 459 (1980). *See also* Restatement (Second) of Torts § 433B (1965); Prosser, Law of Torts § 41 at 241 (4th ed.1971).

20. *Nallan, supra* note 19; Restatement (Second) of Torts, §§ 302B, 449 (1965). *See also Walkoviak, supra* note 4, at 628:

Once the plaintiff had introduced some evidence that the innkeeper in fact committed the acts or omissions which he has alleged to be negligence ... then the question of whether the acts of the third persons constitute new and intervening causes is a part of the foreseeability element of the issue of proximate cause. "Ordinarily [of course,] the question of whether an act of negligence was a proximate cause of the consequences presents an issue for determination by the fact finder." (Citation omitted.)

21. Utah, 655 P.2d 680 (1982).

22. *Id.* at 684. *See also Sumsion v. Streator-Smith, Inc.*, 103 Utah 44, 132 P.2d 680 (1943).

of safe accommodation: "You are assured maximum security because of removable lock cores which permit lock changes and prevent the use of missing keys."

 An action for breach of warranty may sound in either contract or tort.[23] It is unclear from the pleadings under which auspices plaintiffs brought their action for breach of warranty. However, in either case, in order to recover, the breach of warranty must be the direct and proximate cause of the damage.[24] While we do not decide the issue of whether this jurisdiction would recognize a cause of action for breach of implied or express warranties of safe accommodation and habitability,[25] we note that plaintiffs' secondary cause of action would fail for the same reason as the first: there is no evidence that is not highly speculative that Mitchell's death was natu-rally and directly traceable to inadequate security on the part of defendants. Further, there is no evidence that the murderer entered the room with a stolen or unauthorized key. Summary judgment was therefore properly granted.

The judgment of the trial court is affirmed.

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

---

**23.** Prosser, Law of Torts § 95 at 632 (4th ed. 1971); *See, e.g., Friedman v. Peoples Service Drug Stores, Inc.,* 208 Va. 700, 160 S.E.2d 563, 565 (1968).

**24.** *See, e.g., E.I. DuPont De Nemours & Co. v. Universal Molded Prods. Corp.,* 191 Va. 525, 62 S.E.2d 233 (1950).

**25.** This cause of action has been recognized in other states. *See, e.g., Hayward v. Holiday Inns,* 459 F.Supp. 634 (E.D.Va.1978).