Rylah K. McNEESE, a minor by Alvin H. Eisenberg, Guardian ad Litem, and Mary L. McNeese, Plaintiffs,

v.

Stephen T. PIER and Threshermen's Mutual Insurance Company, Defendants-Third Party Plaintiffs-Appellants-Cross Respondents,†

v.

Marcus GRIFFIN, Third Party Defendant-Respondent,

ABC INSURANCE and DEF Insurance Company, Third Party Defendants,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Third Party Defendant-Respondent-Cross Appellant.

Supreme Court

*No. 91-0372. Oral argument November 3, 1992.—Decided March 24, 1993.*

(Also reported in 497 N.W.2d 124.)

†Motion for reconsideration denied May 18, 1993.

For the defendants-third party plaintiffs-appellants-cross respondents there were briefs by *Douglas H. Starck, Linda E. B. Hansen, Mary E. Nelson* and *Riordan, Crivello, Carlson, Mentkowski & Steeves, S.C.,* Milwaukee and oral argument by *Mr. Starck.*

For the third party defendant-respondent-cross appellant there were briefs by *Timothy S. Knurr* and *Schoone, Ware, Fortune & Leuck, S.C.,* Racine and oral argument by *Mr. Knurr.*

LOUIS J. CECI, J.   This case comes before the court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats. Stephen T. Pier (Pier) and Threshermen's Mutual Insurance Company (Threshermen's) appeal from the judgment entered by the circuit court of Racine County, Wayne J. Marik, Circuit Judge. The circuit court had denied a motion by Pier and Threshermen's to reallocate the negligence of the uncollectible tortfeasors, Marcus Griffin and Mary McNeese, to the collectible tortfeasors, Pier and State Farm Mutual Automobile Insurance Company (State Farm), for the purpose of contribution. State Farm cross-appeals from the denial of its motion to change the jury's special verdict answers to Questions 5 and 6 from "yes" to "no," which answers found Mary Booker negligent and her negligence to be causal. Because we conclude that there is no credible evidence to support

the jury's answer that Mary Booker was negligent, we reverse the order denying State Farm's motion to change the answers to the negligence questions from "yes" to "no" and vacate the judgment. Reversing on the negligence issue leaves Pier and Threshermen's as the only collectible parties. Consequently, we do not address the issue of whether the negligence of the uncollectible tortfeasors should be reallocated to the collectible tortfeasors for the purposes of contribution.

In 1985, six-year-old Rylah McNeese was injured when a pickup truck driven by Pier struck her as she crossed South Memorial Drive in Racine.

Rylah lived with her mother and her mother's boyfriend, Marcus Griffin, at the time. Their home was in the middle of the block on the west side of South Memorial Drive. Corey Golden, a schoolmate of Rylah's at Red Apple School, lived across the street, approximately one house to the north.

Mary Booker had children who also attended Red Apple School. Booker and Corey Golden's mother agreed that Booker would drive Corey to school. Booker would drive to Corey's house and park in one of the driveways that were on either side of the Golden house. Booker would wait for Corey to come to the car and then drive the children to school.

One day, Corey suggested to Rylah that maybe Rylah could ride to school with her. Rylah asked her mother, Mary, whether she could ride along with Corey. Mary McNeese asked Booker whether Rylah could ride along, and Booker agreed that Rylah would ride with Booker and that if Booker could not drive, Ms. McNeese would. Ms. McNeese did not pay Booker for driving Rylah to school, but occasionally would give Booker a "couple of dollars" for gas.

627

Once Rylah began to ride with the other children, Booker continued to park next to the Golden house. On most mornings from that point on, Rylah would wait by her front window and watch for Booker to park in one of the two driveways next to the Golden house. When Booker arrived, Rylah would tell her mother she was leaving and go to the car. Rylah's mother and Marcus Griffin never accompanied Rylah. If Booker had parked in the driveway to the south of the Golden house, Rylah would cross the street from her driveway. If Booker had parked to the north of the Golden house, Rylah would cross the street from a neighbor's driveway. As Rylah crossed the street, either her mother or Griffin would stand at the window and watch her.

Booker and the McNeeses followed this routine on most mornings. Occasionally, Mary McNeese would drive the children instead of Booker or, if Booker knew Corey was not going to school that day, Booker would park on Rylah's side of the street.

On January 28, 1985, Rylah saw Booker arrive and park next to the Golden house. Rylah walked outside, and as she crossed the street she was struck and injured by a pickup truck driven by Pier. Pier's truck had a snowplow attached to it, and Pier testified that the snowplow obstructed his vision.

Mary McNeese and Rylah's guardian ad litem filed a complaint alleging negligence against Pier and Threshermen's, Pier's insurer. Pier and Threshermen's counterclaimed that Mary McNeese's negligent care of Rylah caused her daughter's injuries. Pier and Threshermen's also filed a third-party action against Marcus Griffin and State Farm, Booker's insurer at the time of the accident. (Booker had died before the complaint was filed.)

Before trial, Pier and Threshermen's settled with Rylah for $70,000 in exchange for a general release. A trial for contribution ensued. The only issue tried was the relative fault of the parties. The jury apportioned liability as follows:

| | |
|---|---|
| Mary McNeese | 75% |
| Marcus Griffin | 10% |
| Mary Booker | 10% |
| Stephen Pier | 5% |
| | 100% |

Mary McNeese and Marcus Griffin were both uncollectible. McNeese had filed for bankruptcy, and Griffin had no assets, no job, and no insurance.

Pier and Threshermen's and State Farm all filed motions after the verdict. Pier and Threshermen's asked the court to reallocate the negligence attributable to McNeese and Griffin to Pier and Threshermen's and State Farm for the purpose of contribution. That motion asked the court for judgment against State Farm in the amount of 10/15 of $70,000 ($46,666.67).

State Farm asked the court to change the jury's special verdict answers to the negligence and cause questions regarding Booker from "yes" to "no." In the alternative, State Farm asked the court to enter judgment in favor of Pier and Threshermen's in the amount of $7,000 (its 10 percent share of $70,000) plus costs.

The circuit court denied State Farm's motion to change the special verdict answers, but granted its motion to enter judgment in the amount of $7,000 plus costs, effectively denying Pier and Threshermen's motion.

Pier and Threshermen's appealed and State Farm cross-appealed from the judgment. The court of appeals certified the following issues for review:

> 1. Whether equitable contribution should be required from a solvent joint tortfeasor for the uncollectible judgment of an insolvent joint tortfeasor.
>
> 2. Whether a person who allows a six-year-old child to ride to school in her car every day thereby assumes a duty to protect the child from the dangers of crossing a busy street to the car, in the event the child's mother fails in her duty to protect the child while crossing the street.

This court accepted the certification.

The first issue is whether Booker was negligent. We will uphold a jury's finding of negligence if there is any credible evidence which, under any reasonable view, supports the verdict. *Johnson v. Misericordia Community Hosp.,* 99 Wis. 2d 708, 744, 301 N.W.2d 156 (1981); *Lipinski v. Pakulski,* 62 Wis. 2d 628, 635, 215 N.W.2d 468 (1974). *See also Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 306, 347 N.W.2d 595 (1984). There is credible evidence if there is evidence which "when reasonably viewed, fairly admits an inference supporting the jury's findings." *Leatherman v. Garza,* 39 Wis. 2d 378, 386, 159 N.W.2d 18 (1968).

State Farm asserts that Booker had no duty towards Rylah. State Farm cites *Reber v. Hanson,* 260 Wis. 632, 635–36, 51 N.W.2d 505 (1952), to support the proposition that Mary McNeese and Marcus Griffin had the duty to ensure Rylah's safety. We disagree with this argument for two reasons: First, the fact that a parent owes a duty toward her child does not necessarily relieve

630

third parties of a duty toward that child. *Shannon v. Shannon,* 150 Wis. 2d 434, 444–45, 442 N.W.2d 25 (1989). Second, we disagree with such a narrow concept of duty. The duty of any person is the duty to act with reasonable care. *Walker v. Bignell,* 100 Wis. 2d 256, 263, 301 N.W.2d 447 (1981); *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483, 214 N.W.2d 764 (1974). "Thus . . . the particular conduct of a defendant is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances." *Walker,* 100 Wis. 2d at 264.

Booker would have breached this duty to exercise reasonable care if, without intending to do any wrong, she acted or failed to act under circumstances in which a person of ordinary intelligence and prudence would reasonably have foreseen that such an act or omission would subject Rylah to an unreasonable risk of injury. *Shannon,* 150 Wis. 2d at 443–44; *Peters v. Holiday Inns, Inc.,* 89 Wis. 2d 115, 122–23, 278 N.W.2d 208 (1979). After searching the record for credible evidence to support the jury's conclusion, *see Fehring,* 118 Wis. 2d at 305–06, we conclude that Booker did not breach her duty to act with reasonable care.

The record reveals the following: Pier testified that Booker had done nothing to distract him. In fact, he had no idea that Booker was even parked in the driveway next to the Golden house until days after the accident.

Mary McNeese testified that on the morning of the accident, Booker did nothing she had not done for the past several months. McNeese said that she initiated contact with Booker to ask if Rylah could ride along

with the other children and that she never expected Booker to park anywhere other than next to the Goldens'. Ms. McNeese said that regardless of where Booker parked, she felt Rylah was capable of crossing the street by herself.

According to Marcus Griffin, Mary McNeese never asked Booker to escort Rylah across the street and, as far as he knew, Booker never helped Rylah across the street. Griffin also testified he never expected Booker to see to it that Rylah cross the street safely.

Generally, a person does not breach her duty of exercising reasonable care simply by being present at the scene of an accident. *See Winslow v. Brown,* 125 Wis. 2d 327, 331, 371 N.W.2d 417 (Ct. App. 1985). Additionally, "Wisconsin does not generally impose a duty upon persons to protect others from hazardous situations." *Erickson v. Prudential Ins. Co.,* 166 Wis. 2d 82, 88, 479 N.W.2d 552 (Ct. App. 1991). Thus, Booker did not breach her duty of ordinary care simply by being in her parked car at the time of the accident.

Pier and Threshermen's cite *Kreuser v. Heritage Mut. Ins. Co.,* 158 Wis. 2d 166, 174, 461 N.W.2d 806 (Ct. App. 1990), which held that a person who intended to enter a vehicle was considered to be "occupying" a vehicle as that term was used in an insurance policy. They argue that because Rylah intended to enter Booker's car prior to the accident, Rylah was an occupant, and therefore Booker owed her a duty of care. Booker did owe Rylah a duty, a duty of reasonable care. The question is whether she breached that duty. *Kreuser* interpreted an insurance policy and does not advance our analysis of Booker's conduct.

Pier and Threshermen's next argue that Booker's conduct created an unreasonable risk of injury. They

analogize this case to *Jacobs v. Draper,* 274 Minn. 110, 142 N.W.2d 628 (1966), which found an ice cream vendor who used a truck and recorded music to attract customers negligent when a child was struck crossing the street to buy ice cream, and *Auseth v. Farmers Mut. Automobile Ins. Co.,* 8 Wis. 2d 627, 99 N.W.2d 700 (1959), which held that it was prejudicial error to strike testimony that a motorist told a child to cross the street because evidence of someone enticing a child to cross the street could influence a jury's decision regarding the child's negligence in stepping into traffic. Enticing a child to cross a busy street like South Memorial Drive could constitute negligence. There is simply no evidence, however, that Booker enticed Rylah to cross the street. There is no evidence that Booker waved or in any way signaled to Rylah that it was safe to cross. Indeed, there is no evidence that Booker even saw the accident.

Pier and Threshermen's also claim that *Shannon* contains relevant similarities. In *Shannon,* a neighbor told a parent who was calling her child home, "It's okay, she's not hurting anything, she'll be all right." 150 Wis. 2d at 438. Soon after that, the child was found floating in the water near the neighbor's pier. That fact and others created a jury question as to whether the neighbors exercised ordinary care. *Shannon,* 150 Wis. 2d at 438, 444. This case differs significantly from *Shannon.* There is no evidence that Booker told Ms. McNeese she would ensure Rylah's safety and no evidence that Booker did anything before the accident but sit in her car.

Pier and Threshermen's next contend that this case is similar to *Toeller v. Mutual Serv. Casualty Ins. Co.,* 115 Wis. 2d 631, 340 N.W.2d 923 (Ct. App. 1983), a case in which a school bus driver was found negligent after the bus driver suspended a child's bus-riding privileges without telling school authorities or the child's parents.

*Id.* at 634. The child subsequently rode his bike to school and was injured. *Id.* The bus driver breached his duty to exercise reasonable care by failing to tell the school authorities or the child's parents when it was foreseeable that the child might not tell his parents and decide to walk or ride his bike to school. *Id.* at 636. There is no evidence of a comparable breach in this case. There is no evidence that Booker acted or failed to act at a time when it was reasonably foreseeable that doing so would subject Rylah to an unreasonable risk of injury. Booker did nothing out of the ordinary on the day of the accident. Booker was merely parked in a driveway, near the scene of the accident.

Pier and Threshermen's assert that Booker's "decision to force six year old Rylah McNeese to cross the busy street, rather than driving her car to Rylah's house, exposed Rylah to the risk of being hit by a car." Booker did not "force" Rylah to cross the street when and where she did. Nor did Booker "force" Rylah to cross by herself. Booker did not prevent Rylah's mother and her boyfriend from escorting Rylah to the car or from instructing Rylah on how and where to cross. Booker merely undertook to provide Rylah with transportation to school; she did not undertake to ensure that Rylah arrive at her car safely. *See generally Miller v. Bristol-Myers Co.*, 168 Wis. 2d 863, 882–83, 485 N.W.2d 31 (1992) (discussion of "good samaritan" rule expressed in sec. 324A of the Restatement (Second) of Torts); Restatement (Second) of Torts, sec. 314A(4) (1965) (special relation giving rise to duty to aid or protect when one "voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection . . ..").

Mary McNeese and Marcus Griffin did not expect Booker to ensure that Rylah crossed the street safely.

They watched Rylah cross the street from the window and felt she was capable of crossing by herself.

As Judge Marik noted:

> She [Ms. McNeese] did not expect Ms. Booker to assist her daughter across the street or to wave her across the street or even to come across and pick her up in front of the McNeese house. All she expected Ms. Booker to do was to provide transportation for her daughter to school.

Mary McNeese's expectations and the agreement between Booker and McNeese have relevance to what risks a reasonable person in Booker's position could have reasonably foreseen and thus whether Booker breached her duty of ordinary care.

There is evidence, of course, that Booker parked in a driveway across the street from Rylah's house. It was foreseeable that when Booker parked in a driveway next to the Goldens' house, Rylah would cross the street. Although parking next to the Goldens' created a risk in a broad sense, it did not create an unreasonable risk.

> Nearly all human acts, of course, carry some recognizable but remote possibility of harm to another. No person so much as rides a horse without some chance of a runaway, or drives a car without the risk of a broken steering gear or a heart attack. But these are not unreasonable risks. Those against which the actor is required to take precautions are those which society, in general, considers sufficiently great to demand preventive measures.

W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts,* sec. 31 at 170 (5th ed. 1984).

After searching the record for evidence which supports the jury's verdict, we can find no credible evidence

635

that under any reasonable view supports the jury's verdict answer that Booker was negligent. Because Booker was not negligent, Pier is the only collectible tortfeasor. As a consequence, we do not address the issue presented by Pier and Threshermen's appeal.

*By the Court.*—The judgment of the circuit court is reversed, and the court is instructed to enter judgment pursuant to this opinion.