Anthony C. ROCKWEIT, a minor, by Jerald P. Donohue, his guardian ad litem, Plaintiffs-Appellants-Cross Respondents,

UNITED WISCONSIN PROSERVICES, INC., Plaintiff,

v.

William SENECAL, d/b/a Evergreen Campgrounds, Truck Insurance Exchange and Keith Rockweit, Defendants,

Mary ROCKWEIT, Defendant-Respondent,

Ann TYNAN and Wisconsin Farmers Mutual Insurance Group, Defendants-Third Party Plaintiffs-Respondents-Cross Appellants-Petitioners,

v.

Christine ROCKWEIT, Third Party Defendant.

Supreme Court

*No. 93–1130. Oral argument September 6, 1995.—Decided December 20, 1995.*

(Also reported in 541 N.W.2d 742.)

411

For the defendants-third party plaintiffs-respondents-cross appellants-petitioners there were briefs by *Thomas A. Lorenson, David J. Colwin* and *Colwin & Lorenson, S.C.,* Fond du Lac, and oral argument by *Thomas A. Lorenson.*

For the plaintiffs-appellants-cross respondents there was a brief by *Jerald P. Donohue* and *Donohue, Sharpe & Casper, S.C.,* Fond du Lac and oral argument by *Jerald P. Donohue.*

JON P. WILCOX, J.   This case involves a review of a published decision by the court of appeals which reversed in part a judgment of the circuit court for

Fond du Lac County, Peter L. Grimm, Judge. *See Rockweit v. Senecal*, 187 Wis. 2d 170, 522 N.W.2d 575 (Ct. App. 1994). The plaintiff-cross-respondent Anthony C. Rockweit (Anthony), by his guardian ad litem, alleged that the defendant-petitioner Ann Tynan (Tynan) was negligent in failing to extinguish hot embers from a campfire contained in a fire pit into which he subsequently fell, causing severe injuries. Following a trial, a jury determined that Tynan was seven percent causally negligent. On motions after verdict, the trial court granted a directed verdict to Tynan and her insurer on the ground that she had no duty to warn of or remedy the hazard presented by the fire pit. The court of appeals reversed, concluding that Tynan owed a common law duty to Anthony and sufficient credible evidence existed for the jury to conclude that Tynan was negligent in failing to extinguish the campfire.

On review, we consider the following issue: Whether a guest at a campfire, who did not participate in the creation or maintenance of the fire, could be held negligent in failing to extinguish it.

We conclude that although Tynan owed Anthony a duty of ordinary care which the jury determined was breached, we find that imposing liability on Tynan in this case would contravene public policy. We therefore reverse the court of appeals on this issue.

## I.

The relevant facts are as follows. The minor, eighteen month old Anthony, sustained injuries when he fell into a fire pit at the Evergreen Campgrounds located in Wild Rose, Wisconsin, on June 26, 1988. The campground was owned and operated by William Senecal. Anthony and his parents, Keith and Christine

Rockweit, were camping at the Evergreen Camp-grounds during the weekend of June 24-26, 1988. The camping group consisted of various members of the extended Rockweit family, as well as several other families that were friends of the Rockweits. Several Rockweit family members were camped in contiguous campsites at the Evergreen. Tynan, a family friend of the Rockweits, was present at the same campground with her husband and children. The Tynans, however, occupied their own campsite several sites away from the Rockweits and on the opposite side of the road.

All of the members of the camping group, except the plaintiff Anthony and his family, arrived at the Evergreen Campgrounds on Friday, June 24, 1988. The Rockweit families selected one of the fire pits centrally located among the campsites to be utilized by the group throughout the weekend. Although the court of appeals termed this particular campfire a "communal fire pit," it should be noted that Tynan was not part of this communal camping group.[1] She did not participate in selecting this site, nor did she exercise any control or maintenance over starting and managing the fire itself. That night, Tynan and her family stayed in their own campsite and maintained their own, independent fire pit. Throughout the weekend, Tynan and her family prepared all of their meals at their own campsite, utilizing their own fire pit. On Saturday, the Tynans spent a large portion of the day at the beach,

---

[1] *Rockweit*, 187 Wis. 2d at 177, 522 N.W.2d at 578. While acquainted with the various Rockweit families, Tynan was merely a guest with respect to the "communal fire" that had been selected by the extended Rockweit families. In fact, a review of the record reveals that the concept of a "communal fire" was introduced at trial by counsel for the plaintiff, and was subsequently adopted by the court of appeals. *Id.*

socializing with the Rockweits, most of whom they had known for several years. At some point during the day, a member of the Rockweit family invited the Tynans to their campsite that evening.

The Keith Rockweit family arrived at Evergreen on Saturday afternoon. Due to the overcrowded nature of the campground that weekend, he shared a campsite with his brother's family. Keith Rockweit pitched the family tent approximately 15-to-20 feet from the communal fire pit, which was already burning upon their arrival.

While some of the families cooked their dinner over the communal fire pit that night, Tynan had dinner at her own campsite and later joined the rest of the Rockweit group around the fire pit. She had no connection to the communal fire pit other than as a guest of the Rockweits that evening. Tynan did not maintain the fire pit in any manner, nor provide any necessary materials to fuel it at any time during her visit. Tynan remained at the Rockweit campsite playing cards and socializing until nearly 4:00 a.m. on Sunday. At this point, the only campers remaining around the fire pit were Tynan, Keith Rockweit and the defendant-respondent Mary Rockweit. When Keith Rockweit announced that he was going to bed, the others also left to return to their respective tents. Tynan's campsite was a short walk down the road. As noted by the court of appeals,[2] it was unclear as to the condition of the

[2] *Rockweit*, 187 Wis. 2d at 178 n.1, 522 N.W.2d at 578 n.1. The testimony among the three principals regarding the state of the embers is conflicting. Keith Rockweit testified that the embers were still glowing when he left the fire pit; Mary Rockweit stated that she could not recall whether the embers were glowing; and Tynan testified that the embers were not glowing but were gray and smoldering. *Id.*

embers in the fire pit. Regardless, the three individuals left without extinguishing the smoldering embers.

Several hours later, Anthony got up with his mother, Christine Rockweit. As they walked across the campsite, he slid into the fire pit and was severely injured. The circular fire pit had been built into the ground, its rim flush to the ground. There were no rocks or other barriers around the fire pit for protective purposes.

A personal injury action was brought against the Evergreen Campgrounds and its insurer Truck Insurance Exchange, Keith Rockweit, Mary Rockweit, and Tynan and her insurer, Wisconsin Farmers Mutual Insurance Group. Christine, Anthony's mother, was impleaded as a third-party defendant by Tynan and her insurer. Prior to trial, Anthony executed a *Pierringer* release with Evergreen and its insurer, settling the claim for maintaining an unsafe fire pit for $50,000, releasing the campground from any further liability. *See Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

Following the trial, the defendants were found causally negligent, with liability apportioned by the jury as follows:

| | |
|---|---|
| William Senecal (Evergreen Campgrounds) | 16% |
| Keith Rockweit | 36% |
| Christine Rockweit | 35% |
| Ann Tynan | 7% |
| Mary Rockweit | 6% |
| | 100% |

The jury also found that the fire pit constituted an open and obvious danger at the time of the accident.

■

Tynan requested a directed verdict on the grounds that neither Wisconsin common law nor statutory law imposed any duty to extinguish the embers in the fire pit. Although it found that no duty existed under the common law, the circuit court concluded that Wis. Stat. § 895.525 (1987-88), the Recreational Use Statute, imposed a duty on Tynan, and therefore Anthony could sustain an action in negligence.[3] *See Rockweit*, 187 Wis. 2d at 179, 522 N.W.2d at 579. The court of appeals disagreed with the circuit court's interpretation that 895.525 went beyond the common law to impose a greater duty of care. We agree that the statute does not impose a greater duty on an individual than that which

---

[3] In addition, Tynan filed the following post-verdict motions: (1) motion for directed verdict; (2) motion for judgment notwithstanding the verdict; and (3) motion to change the answers to the special verdict questions finding her negligent, on a similar theory of insufficiency of the evidence. *See* Wis. Stat. § 805.14(5)(b)-(d) (1987-88). On March 8, 1993, the circuit court's initial response to its motions after verdict was that Tynan was negligent because she violated Wis. Stat. § 895.525 (4)(a)4 (1987-88) in that she failed to refrain from activity in a manner that may contribute to injury to other persons while participating in a recreational activity (camping). The circuit court later reversed itself and granted a directed verdict to Tynan. The circuit court reasoned that since Tynan was being held to the standards of the possessor or occupant of land, she had no duty to warn of or remedy the hazard presented by the fire pit since it was an open and obvious danger, thus barring Anthony's negligence claim. The circuit court denied Anthony's Motion for Reconsideration on March 29, 1993. *See Rockweit*, 187 Wis. 2d at 180 n.4, 522 N.W.2d at 579 n.4.

exists under the common law. *Id.* at 194, 522 N.W.2d at 585.

The court of appeals held that Tynan owed a common law duty of ordinary care to Anthony. Depicting her failure to extinguish the hot embers in the fire pit as an affirmative act, the court of appeals found that such conduct constituted negligent management or control of a fire. *Id.* at 188-90, 522 N.W.2d at 583.

On appeal, Tynan disputes the court of appeals' finding of a common law duty as well as the holding that sufficient credible evidence existed to support the jury's determination that such duty had been breached by failing to extinguish the campfire.[4]

## II.

In order to maintain a cause of action for negligence in this state, there must exist: (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976) (citing *Falk v. City of Whitewater*, 65 Wis. 2d 83, 85, 221 N.W.2d 915, 916 (1974)). In *Olson v. Ratzel*, 89 Wis. 2d 227, 251-52, 278 N.W.2d 238, 250 (Ct. App. 1979), the court articulated that:

---

[4] Inasmuch as the closing arguments were not recorded, the facts of this particular case are somewhat confusing. As a reviewing court, it is unclear to us what theories the parties relied upon in their respective closing arguments. We note that it would be a better practice for courts, in the future, to require the recording of closing arguments.

Where the facts alleged to give rise to a duty are agreed upon, the question of the existence of a duty is one of law. This question is closely related to the question of whether a defendant is not negligent as a matter of law, *i.e.*, based on the facts presented, no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care. Generally, this question is for the jury and should be decided as a matter of law before trial only in rare cases.

The first issue to be discussed is whether Tynan owed Anthony a duty of care.[5] "Each individual is held, at the very least, to a standard of ordinary care in all activities." *Coffey*, 74 Wis. 2d at 537, 247 N.W.2d at 138. As this court stated in *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483-84, 214 N.W.2d 764, 766 (1974), the proper analysis of duty in Wisconsin is as follows:

The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm

---

[5] The general duty imposed by the common law is aptly described in *Fitzgerald v. Ludwig*, 41 Wis. 2d 635, 639, 165 N.W.2d 158, 160 (1969) where it states that "[e]very person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act." (citing *Kahn v. James Burton Co.*, 5 Ill.2d 614, 622, 126 N.E.2d 836, 840 (1955)); *see also Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 236 N.W.2d 1 (1975) (abolishing the common law distinction between licensees and invitees, and holding that "[t]he duty toward all persons who come upon property with the consent of the occupier will be that of ordinary care. By such standard of ordinary care, we mean the standard that is used in all other negligence cases in Wisconsin"). *Id.* at 857, 236 N.W.2d at 11.

and the identity of the harmed person or harmed interest is unknown at the time of the act . . . .

This passage represents the minority viewpoint in *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928) (Andrews, J., dissenting), which this court adopted in *Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 55 N.W.2d 29 (1952). The minority rationale in *Palsgraf* was expressly adopted by this court in *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 77 N.W.2d 397 (1956). *See also, Schilling v. Stockel*, 26 Wis. 2d 525, 531, 133 N.W.2d 335 (1965) (capsulizing the history of this court's rejection of the no-duty, no-liability concept of the majority in *Palsgraf*).

The concept of a common law duty was further refined in our decision in *Rolph v. EBI Cos.*, 159 Wis. 2d 518, 464 N.W.2d 667 (1991), where we stated: "A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable." *Id.* at 532, 464 N.W.2d at 672 (quoting *Schuster v. Altenberg*, 144 Wis. 2d 223, 235, 424 N.W.2d 159, 164 (1988)); *see also Lloyd v. S.S. Kresge Co.*, 85 Wis. 2d 296, 305, 270 N.W.2d 423, 427 (Ct. App. 1978).

Anthony argues that Tynan, as one of the last campers to go to bed, had a duty to extinguish the fire because it was foreseeable to a reasonable person that someone could be hurt if she did not do so. Further, he asserts that this duty existed irrespective of where Tynan was camping that weekend, as she shared in the communal fire and the accompanying responsibility to douse its embers at night's end. Relying upon the decision in *DeBauche v. Knott*, 69 Wis. 2d 119, 122-23, 230 N.W.2d 158, 160 (1975) and *Winslow v. Brown*, 125 Wis. 2d 327, 331, 371 N.W.2d 417, 420 (Ct. App. 1985),

Tynan argues that she did not have a duty to Anthony to extinguish the fire because Wisconsin law does not impose a duty to assist or preserve a person from a risk of injury or a hazardous situation created by another. While recognizing that she could have extinguished the fire, she argues that she had no legal obligation to do so. She was not the owner or possessor of the land on which the fire pit was located, nor did she do anything to create or maintain the fire.

The court of appeals agreed with Tynan's argument that she did not have a duty to protect Anthony from a hazardous situation, but concluded that her "failure to extinguish hot embers in a fire pit may be considered negligent management or control of a fire." *Rockweit*, 187 Wis. 2d at 190, 522 N.W.2d at 583. Classifying her conduct as an affirmative act, the court of appeals reasoned that leaving the hot embers in the fire pit created the dangerous situation which could foreseeably cause harm to someone.

■ We disagree with the court of appeals' suggestion that by socializing around the fire pit that evening, Tynan assumed an affirmative obligation to extinguish the embers. To the contrary, the record demonstrates that this is a case of inaction, where a social guest was merely present several hours prior to the accident. Furthermore, we find that Tynan's assertion that she did not owe Anthony a duty to exercise ordinary care is incorrect. Although individuals generally owe a duty of ordinary care to all persons, we recognize that limitations do exist with respect to the imposition of a legal duty in some cases. *McNeese v. Pier*, 174 Wis. 2d 624, 632, 497 N.W.2d 124, 127 (1993) (citing *Erickson v. Prudential Property and Cas. Ins. Co.*, 166 Wis. 2d 82, 88, 479 N.W.2d 552, 554 (Ct. App. 1991)); *see also Zelco*

*v. Integrity Mut. Ins. Co.*, 190 Wis. 2d 74, 78, 527 N.W.2d 357, 358 (Ct. App. 1994). Our review of the record reveals that Tynan's only connection to the fire pit was her mere presence as a guest of the Rockweits.

Citing *Waters v. United States Fidelity & Guaranty Co.*, 124 Wis. 2d 275, 369 N.W.2d 755 (Ct. App. 1985), Tynan also maintains that the fire pit presented an open and obvious danger to a "reasonable person," thereby relieving her of liability, as she simply had no duty to act to remedy or warn of an open and obvious condition. Anthony argues that Tynan lacked the requisite "owner" or "possessor" status necessary to rely on the open and obvious danger doctrine to bar the plaintiff's negligence claim. Anthony further argues that the defense is not available to Tynan because Wis. Stat. § 891.44 (1987-88) conclusively establishes that a minor under the age of seven cannot be found to be negligent as a matter of law.

Although we decide the present case on different grounds, we presently take the opportunity to address the apparent conflict of authority among the court of appeals that exists with respect to the application of the open and obvious danger doctrine. We expressly reaffirm our prior holding in *Pagelsdorf v. Safeco Ins. Co. of America*, 91 Wis. 2d 734, 284 N.W.2d 55 (1979) that a landlord owes his or her tenant or anyone else on his or her premises a duty to exercise ordinary care. In *Pagelsdorf*, we held that "[i]ssues of notice of the defect, its obviousness, control of the premises, and so forth are all relevant only insofar as they bear on the ultimate question: Did the landlord exercise ordinary care in the maintenance of the premises under all the circumstances?" *Id.* at 745, 284 N.W.2d at 61. Our decisions in *Pagelsdorf* and *Antoniewicz v. Reszczynski*,

70 Wis. 2d 836, 236 N.W.2d 1 (1975) abrogated the common law immunity by subsuming the concept of open and obvious danger into the consideration of common law negligence. In the ordinary negligence case, if an open and obvious danger is confronted by the plaintiff, it is merely an element to be considered by the jury in apportioning negligence and will not operate to completely bar the plaintiff's recovery.[6]

We find Tynan's argument that she cannot be held liable for Anthony's injuries because Wisconsin law does not impose a duty upon her to act to be without merit. We conclude that while present at the campfire prior to the accident, Tynan did owe Anthony a common law duty, the duty to exercise ordinary care. We now turn to the question of whether she breached that duty.

Negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk of harm to others. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660, 665 (1979). "The risk need not be to the particular plaintiff. The test [in Wisconsin] is whether unreasonable risk to the world at large is created by the conduct." *Id.* The resolution of this mixed question of law and fact is ordinarily left to the jury. *Ceplina v. South Milwaukee Sch. Bd.*, 73 Wis. 2d 338, 341-42, 243 N.W.2d 183, 185 (1976); *Padilla v. Bydalek*, 56 Wis. 2d 772, 776, 203 N.W.2d 15, 18 (1973).

Our decision in *Shannon v. Shannon*, 150 Wis. 2d 434, 443-44, 442 N.W.2d 25, 30 (1989), supports the

---

[6] *See also* WIS JI-CIVIL 8020 and accompanying COMMENT (discussing the contrary holdings of the court of appeals in applying the open and obvious danger doctrine).

well recognized principle that negligence consists of failing to use that degree of ordinary care which would be exercised by "the great mass of mankind" under the same or similar circumstances when it stated:

> A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject him or his property, or the person or property of another, to an unreasonable risk of injury or damage.

*See also Peters v. Holiday Inns, Inc.*, 89 Wis. 2d 115, 122-23, 278 N.W.2d 208, 211-212 (1979); WIS JI-CIVIL 1005.[7]

The jury determined that Tynan had breached her duty to Anthony to exercise ordinary care, concluding that the failure to extinguish the hot embers in the fire pit was a substantial factor in the resultant injuries suffered by the child. The conclusion that Tynan's conduct constituted negligence is supported by credible evidence within the record.

Tynan challenges this finding and relies upon our decision in *McNeese* to support her argument that she did not breach a duty of exercising ordinary care simply by being present at the fire pit.[8] Although the parties

---

[7] **WIS JI-CIVIL 1005 NEGLIGENCE: DEFINED**

A person fails to exercise ordinary care, when, without intending to do any harm, he or she does something or fails to do something under circumstances in which a reasonable person would foresee that by his or her action or failure to act, he or she will subject a person or property to an unreasonable risk of injury or damage.

[8] *See also Winslow v. Brown*, 125 Wis. 2d 327, 371 N.W.2d 417 (Ct. App. 1985) (holding that because there is no general

argue the significance of our decision in *McNeese,* we find that our conclusion in the present case is properly guided by considerations of public policy.

## III.

As we held in *Schuster v. Altenberg,* 144 Wis. 2d 223, 424 N.W.2d 159 (1988), "once it is determined that a negligent act has been committed and that the act is a substantial factor in causing the harm, the question of duty is irrelevant and a finding of nonliability can be made only in terms of public policy." *Id.* at 235, 424 N.W.2d at 164 (quoting *A.E. Investment Corp.,* 62 Wis. 2d 479, 484-85, 214 N.W.2d 764, 767 (1974)); *see also Haas v. Chicago & N. W. Ry. Co.,* 48 Wis. 2d 321, 326, 179 N.W.2d 885, 888 (1970). A finding of nonliability made in terms of public policy is a question of law which the court alone decides. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 737, 275 N.W.2d 660, 667 (1979); *Pfeifer,* 262 Wis. at 240, 55 N.W.2d at 35.

We held in *Nelson v. Davidson,* 155 Wis. 2d 674, 679-80, 456 N.W.2d 343, 345 (1990) that "the imposition of liability in a given situation is a question of policy whether the liability is regulated by the notion of duty, or whether liability is cut off after all the elements of negligence have been established, as more recent cases of this court have stated." Some cases have held that the actor had no "duty" to the injured party; however, the determination to deny liability is essentially one of public policy rather than of duty or causation. *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 183-84, 77 N.W.2d 397, 402 (1956).

---

duty to intervene, mere presence at the commission of a tort, or the failure to object, is insufficient to constitute concerted action for purposes of establishing liability).

In our decision in *Colla v. Mendella*, 1 Wis. 2d 594, 598-99, 85 N.W.2d 345, 348 (1957), we provided a number of factors for this court to consider in determining whether to limit liability on the grounds of public policy:

> It is recognized by this and other courts that even where the chain of causation is complete and direct, recovery against the negligent tort-feasor may sometimes be denied on grounds of public policy because the injury is too remote from the negligence or too 'wholly out of proportion to the culpability of the negligent tort-feasor', or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden upon users of the highway, or be too likely to open the way to fraudulent claims, or would 'enter a field that has no sensible or just stopping point.'

*Id.* (citing *Waube v. Warrington*, 216 Wis. 603, 613, 258 N.W. 497, 501 (1935), *overruled on other grounds by Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994); *Osborne v. Montgomery*, 203 Wis. 223, 237, 234 N.W. 372, 377-78 (1931)).

In this case, consistent with the rationale of the above decisions, the jury determined that Tynan's alleged failure to extinguish the hot embers in the fire pit when she retired for the evening was an omission that would foreseeably cause harm to someone. The duty was to refrain from such omission. Although credible evidence existed to support the jury's finding that Tynan's omission was negligent, this court believes that public policy requires that she not be held responsible for the child's injuries. It is undisputed factually that Tynan did not participate in the selection of the

fire pit site, nor did she start, maintain, or provide any necessary incendiary materials for the fire. The imposition of liability in this case, under the given facts, would place an unreasonable burden upon a guest in Tynan's position.

It is clear from the record that Tynan never exercised custody or control of Anthony[9] and that her only connection with the fire pit was to sit beside it during the early morning hours on Sunday, playing cards and socializing with the Rockweits. She did not create the hazard which caused Anthony's injuries, and at no time did she assume any responsibility to maintain the fire pit. The dangerous propensities akin to fire are commonplace to a campsite. However, the responsibility for maintaining the safe existence of the fire pit properly remains with the possessor of the campsite. Those who merely visit the site or are participants in a casual sense as was Tynan, but who do not fuel or feed the fire, should not assume the burden of liability that is improperly being shifted in this case. Allowance of recovery under these facts would essentially require a guest to remedy any allegedly unsafe condition over which he or she has exercised no control, and did not create, or risk being saddled with unforeseen financial responsibility.

The injuries sustained by Anthony are wholly out of proportion to the alleged culpability of Tynan. Regardless of what had been done to the fire pit on the prior evening, or whether, in fact, there were hot coals in the fire pit, a fire pit is an unsafe place for a small

---

[9] *See generally* Restatement (Second) of Torts, § 314A(4) (1965) (special relation giving rise to duty to aid or protect when one "voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection...")

child. Anthony's exposure to the hazard in this case, and his resultant injuries would have occurred in exactly the same manner even if Tynan had never been present at the campground. Keith Rockweit, as one of the last three campers to retire, had pitched the family tent 15-to-20 feet from the fire pit. Not only had he exercised control over the fire pit prior to the accident, he also chose not to extinguish the embers, concluding that the fire pit did not pose an unreasonable risk to any member of the camping group, including Anthony. Further, Christine Rockweit testified that she was fully aware that the fire pit constituted a hazard at the time of the accident and had not relied on a supposition that someone the night before might have doused the embers, including Tynan. As the jury concluded, it was Christine who failed to exercise supervisory responsibility over Anthony at the time of the accident, not Tynan. Therefore, we conclude as a matter of law that the injury that Anthony suffered several hours later outside Tynan's presence is too remote from any alleged negligence on her part to impose liability.

We conclude that imposing liability in this case would unnecessarily allow the law of negligence to enter a field that has no sensible or just stopping point. We are particularly persuaded by the reasoning of Judge Grimm with respect to this policy consideration where he states:

> I think this factor is likewise met, because there are numerous examples that have been cited as to where one would draw the line on negligence in a camping situation. And when it comes to fires, there is that same difficult issue, is it the last adult to leave, the last person to put a log in the fire? Or is it the owner of the campsite? Or the person who started the campfire? And this Court feels that it is

best handled by the owner of the fire, by whose campsite it is.

We see no sensible stopping point if liability were to be imposed on someone in Tynan's position, as she merely visited the campsite, played cards and socialized as a guest of the Rockweits.

After considering the various policy factors provided by this court in *Colla* and its progeny, we decline to impose liability in this case. We therefore reverse the court of appeals on this issue.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I write separately to address the defendant's claim that "Wisconsin law does not impose a duty upon one person to actively assist or preserve a person from a risk of injury created by another." Brief for Petitioner at 23. This argument frames the issue incorrectly under Wisconsin tort law. A person is negligent who "does something or fails to do something under circumstances in which a reasonable person would foresee that by his or her action or failure to act, he or she will subject a person or property to an unreasonable risk of injury or damage." Wis JI—Civil 1005 (1993).[1] "Wisconsin law considers conduct to be negligent if it involves a foreseeable risk of harm to anyone." *Bowen*

---

[1] *See also Rolph v. EBI Cos.*, 159 Wis. 2d 518, 532, 464 N.W.2d 518 (1991) (quoting *Schuster v. Altenberg*, 144 Wis. 2d 223, 235, 424 N.W.2d 159 (1988) and applying the same standard); *LePoidevin v. Wilson*, 111 Wis. 2d 116, 124, 330 N.W.2d 555 (1983) (collecting cases); *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 214 N.W.2d 764 (1974) (collecting cases).

*v. Lumbermans Mut. Cas. Co.*, 183 Wis. 2d 627, 644, 517 N.W.2d 432 (1994).

As the majority notes, majority op. at 419-20, Wisconsin has long followed the view of duty advanced by Judge Andrews in his *Palsgraf* dissent: "Every one owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 350, 162 N.E. 99 (1928) (Andrews, J., dissenting). Duty, therefore, is no more than "an ingredient in the determination of negligence." *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484, 214 N.W.2d 764 (1974). *See also Bowen*, 183 Wis. 2d at 644 ("[i]n Wisconsin, the doctrine of public policy, not the doctrine of duty, limits the scope of the defendant's liability"); *Ollerman v. O'Rourke*, 94 Wis. 2d 17, 28, 288 N.W.2d 95 (1980).

On careful review, the cases the defendant cites for the proposition that she owed the plaintiff no duty of care, Brief for Petitioner at 23-24, do not support her position. The defendant relies upon *Fitzgerald v. Ludwig*, 41 Wis. 2d 635, 165 N.W.2d 158 (1969), which states that "[o]ne person does not owe to all other persons a general duty of care unattached to some other conduct." *Id.* at 638. But *Fitzgerald* addresses the attractive nuisance doctrine. As the court explained in *A.E. Investment*, *Fitzgerald* is "concerned with special types of legal relationships" and therefore "out of the mainstream of negligence law in Wisconsin." *A.E. Investment*, 62 Wis. 2d at 486; *see also Ceplina v. South Milwaukee School Board*, 73 Wis. 2d 338, 343, 243 N.W.2d 183 (1976). Therefore, reliance upon *Fitzgerald* is "inappropriate in describing the general duty that an alleged tortfeasor has in the ordinary negligence case." *A.E. Investment*, 62 Wis. 2d at 486.

The defendant also relies on language in *De Bauche v. Knott*, 69 Wis. 2d 119, 230 N.W.2d 158 (1975), which states that "[a]s a general rule, the law imposes no duty on one person actively to assist in the preservation of the person or property of another from injury, even though the means by which harm can be averted are in his possession." *Id.* at 122-23. But in this passage, the *De Bauche* court was merely recapitulating the argument of the tortfeasor in that case. Finding the tortfeasor liable, the *De Bauche* court expressly refused to adopt the tortfeasor's proposed statement of law discussed above, noting instead that under Wisconsin law the tortfeasor owed the plaintiff a duty whenever "it can be said that it was foreseeable that his act or omission to act may cause harm to someone." *Id.* at 123-24.

Given the *De Bauche* court's refutation of the "no duty" standard, the defendant's reliance on *Winslow v. Brown*, 125 Wis. 2d 327, 371 N.W.2d 417 (Ct. App. 1985) to bolster her "no duty" argument is infirm. In stating that "generally no duty exists to protect others from hazardous situations," *Id.* at 331, the *Winslow* court cited the same language from *De Bauche* which the *De Bauche* court itself had discredited. Furthermore, *Winslow* was a summary judgment case in which the complaint was dismissed because the complainants' affidavits neither stated nor allowed a reasonable inference that the alleged tortfeasors were negligent. *Winslow*, 125 Wis. 2d at 329-330.[2]

---

[2] Further compounding the *Winslow* court's misplaced reliance on *De Bauche*, subsequent decisions relied upon by the defendant, Brief for Petitioner at 24-25, 34-35, and by the majority, majority op. at 421-22, demonstrate an equally misplaced reliance upon *Winslow* and its progeny. In *Erickson v. Prudential Ins. Co.*, 166 Wis. 2d 82, 88, 479 N.W.2d 552 (1991),

Paradoxically, then, the cases cited by the defendant in advocating a different interpretation of Wisconsin negligence law confirm the extent to which that law nevertheless has remained the same: it imposes a general duty of care on all persons to the world at large. *Bowen*, 183 Wis. 2d at 644 n.12 (quoting *Palsgraf*, 248 N.Y. at 350 (Andrews, J., dissenting)).

Citing *McNeese v. Pier*, 174 Wis. 2d 624, 497 N.W.2d 124 (1993), the defendant also argues that "a person does not breach a duty of exercising reasonable care simply by being present." Brief for Petitioner at 23. The *McNeese* court, applying the customary standard of review, *see Weiss v. United Fire & Casualty Co.*, 197 Wis. 2d 365, 541 N.W.2d 753 (1995), merely determined that there was no credible evidence supporting the jury finding that the alleged tortfeasor had breached her duty of care to the plaintiff. *McNeese*, 174 Wis. 2d at 631. In contrast, the record in the case before us demonstrates that (1) the defendant failed to extinguish the embers in the firepit, even though she admitted knowing that they could still be hot in the morning; (2) as an experienced camper, the defendant knew that it was a good safety practice to extinguish embers before retiring to bed; (3) the water necessary to douse the embers was readily available and the

_____

the court of appeals cited *Winslow* and echoed the discredited language from *De Bauche*, stating that "Wisconsin does not generally impose a duty upon persons to protect others from hazardous situations." *Zelco v. Integrity Mut. Ins. Co.*, 190 Wis. 2d 74, 527 N.W.2d (Ct. App. 1994) also quotes the same sentence from *De Bauche*, citing *Erickson*. *Zelco*, 190 Wis. 2d at 79. Finally, *McNeese v. Pier*, 174 Wis. 2d 624, 497 N.W.2d 124 (1993), quotes the same discredited sentence from *De Bauche* as well, citing both *Winslow* and *Erickson*. *McNeese*, 174 Wis. 2d at 632.

defendant conceded that it would have been easy to do so; and (4) the defendant had no expectation that her two companions would do so. The defendant also admitted knowing that these dangers were exacerbated by both the presence of little children in the camping party and the fact that the firepit was flush with the ground.

These facts constitute credible evidence allowing a reasonable jury to conclude that the defendant breached her duty of care. Although the court nevertheless concludes that the defendant is not liable, it is not because she had no duty of care but rather because of public policy. Majority op. at 426. The two concepts—duty and public policy—should not be confused. In Wisconsin, one always owes a duty of care to the world at large, which is why "[t]he consistent analyses of this court reveal that the question of duty is not an element of the court's policy determination." *A.E. Investment*, 62 Wis. 2d at 484.

For the reasons set forth, I concur in the mandate.

I am authorized to state that Justice Ann Walsh Bradley joins this opinion.

DONALD W. STEINMETZ, J. (*concurring*). I agree with the majority in applying the public policy rationale to this case. However, my preference would have been to find that there was no credible evidence for a reasonable jury to find that Ann Tynan breached her duty with the facts in this record. *See Johnson v. Misericordia Community Hosp.*, 99 Wis. 2d 708, 744, 301 N.W.2d 156 (1981).

I would, therefore, apply the rationale of *McNeese v. Pier*, 174 Wis. 2d 624, 632, 497 N.W.2d 124, 127 (1993) to this case.

433

I am authorized to state that Chief Justice Roland B. Day joins this concurring opinion.