OPINION
{¶ 1} On January 6, 2003, appellant, Fred Campbell, entered the Westfield Shoppingtown Belden Village Mall and slipped and fell. On January 4, 2005, appellant filed a complaint against appellee, WEA Belden LLC dba Westfield Shoppingtown Belden Village, alleging negligence, claiming his slip and fall was caused by a puddle of water on the floor near the entrance. An amended complaint was filed on March 16, 2005.
 {¶ 2} Appellee filed a motion for summary judgment on May 19, 2006. Appellant filed a response on June 5, 2006. In its reply brief, appellee requested the trial court to strike appellant's affidavit because it conflicted with statements made in his deposition. By judgment entry filed July 14, 2006, the trial court struck paragraph 16 of appellant's affidavit and granted summary judgment to appellee.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE PUDDLE OF WATER ON THE FLOOR OF THE APPELLEE'S ESTABLISHMENT WAS AN OPEN AND OBVIOUS DANGER."
 II {¶ 5} "THE TRIAL COURT ERRED WHEN IT STRUCK PARAGRAPH 16 OF THE APPELLANT'S AFFIDAVIT SINCE HIS DEPOSITION TESTIMONY DID NOT CONTRADICT HIS TESTIMONY IN THE AFFIDAVIT." *Page 3 
 I {¶ 6} Appellant claims the trial court erred in finding the puddle of water was open-and-obvious and thereby erred in granting summary judgment to appellee. We disagree.
 {¶ 7} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 8} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 9} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 {¶ 10} In Armstrong v. Best Buy Company, Inc., 99 Ohio St.3d 79,2003-Ohio-2573, syllabus, the Supreme Court of Ohio re-affirmed the open-and-obvious doctrine as follows: *Page 4 
 {¶ 11} "The open-and-obvious doctrine remains viable in Ohio. Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises. Sidle v. Humphrey (1968),13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, approved and followed."
 {¶ 12} The Sidle court at paragraphs one and two of the syllabus stated the following:
 {¶ 13} "1. An occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.
 {¶ 14} "2. The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them. (Debie v. CochranPharmacy-Berwick, Inc., 11 Ohio St.2d 38, 227 N.E.2d 603, approved and followed.)"
 {¶ 15} Appellant argues for a change in application of this doctrine to a comparative negligent application. In support, appellant cites an unreported Court of Common Pleas case and the case of Schindler v.Gale's Superior Supermarket, Inc. (2001), 142 Ohio App.3d 146, 153, wherein the Schindler court sought to "analyze the openness and obviousness of a hazard not in terms of the duty owed but rather in terms of causation."
 {¶ 16} The Armstrong court at ¶ 7 and 8, addressed theSchindler decision as follows: *Page 5 
 {¶ 17} "We reject Armstrong's position and that of theSchindler court. The facts of Texler [v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677] are straightforward. The plaintiff was injured when she tripped and fell over a bucket that the defendant had placed on the sidewalk to prop open a door. The jury found that defendant was 100 percent negligent and that the negligence was a proximate cause of plaintiff's injuries. The trial court denied defendant's motions for judgment notwithstanding the verdict and for a new trial. The court of appeals reversed and entered judgment for the defendant. We reversed that decision, finding that reasonable minds could disagree over the allocation of negligence between the parties.Texler, 81 Ohio St.3d at 681, 693 N.E.2d 271.
 {¶ 18} "A close reading of Texler reveals that the sole issue before us was whether the trial court should have found that the plaintiff was more than 50 percent negligent and, as such, should have granted a motion notwithstanding the verdict. The existence of the storeowner's duty to the plaintiff had been determined at trial and was not an issue on appeal. It is fundamental that in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom. Menifee v. Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75,77, 15 OBR 179, 472 N.E.2d 707. In Texler, we were concerned with only the third component, proximate cause, and, in particular, the allocation of fault in terms of comparative negligence. The open-and-obvious doctrine, which concerns the first element of negligence law, the existence of a duty, was not before our court. Thus, Texler does not even address the open-and-obvious doctrine, let alone abrogate this rule. The Schindler court was mistaken when it construed the *Page 6 Texler decision as abrogating the open-and-obvious doctrine in favor of a comparative-negligence analysis."
 {¶ 19} The Armstrong court at ¶ 9, 10 and 11, also addressed the very argument made by appellant sub judice:
 {¶ 20} "We are cognizant of the fact that some courts have abolished the open-and-obvious rule in favor of a comparative-negligence approach. These courts, like that of Schindler, look at obviousness of the hazard as one factor to be taken into account in determining a plaintiff's comparative negligence. See, e.g., Rockweit v. Senecal (1995),197 Wis.2d 409, 541 N.W.2d 742; Robertson v. Magic Valley Regional Med.Ctr (1990), 117 Idaho 979, 793 P.2d 211; Tharp v. Bunge Corp.
(Miss. 1994), 641 So.2d 20; Parker v. Highland Park, Inc. (Texas 1978),565 S.W.2d 512. Other courts have adopted Restatement of the Law 2d, Torts (1965), Section 343A, which finds liability when the landowner should have anticipated harm caused by obvious dangers. See, e.g.,Ward v. K Mart Corp. (1990), 136 Ill.2d 132, 143 Ill.Dec. 288,554 N.E.2d 223.
 {¶ 21} "However, we decline to follow these cases because we believe that the focus in these decisions is misdirected. The courts analyzing the open-and-obvious nature of the hazard as an element of comparative negligence focus on whether the plaintiff's negligence in confronting an open-and-obvious danger exceeds any negligence attributable to the defendant. See, e.g., Kloes v. Eau Claire Cavalier Baseball Assn.,Inc. (1992), 170 Wis.2d 77, 87, 487 N.W.2d 77. Under this approach, the open-and-obvious rule does not act as an absolute defense. Rather, it triggers a weighing of the parties' negligence. Id. *Page 7 
 {¶ 22} "What these courts fail to recognize is that the open-and-obvious doctrine is not concerned with causation but rather stems from the landowner's duty to persons injured on his or her property. By failing to recognize the distinction between duty and proximate cause, we believe that these courts have prematurely reached the issues of fault and causation."
 {¶ 23} The clear instruction from the Supreme Court of Ohio on the open-and-obvious doctrine is included in Armstrong at ¶ 13:
 {¶ 24} "We continue to adhere to the open-and-obvious doctrine today. In reaching this conclusion, we reiterate that when courts apply the rule, they must focus on the fact that the doctrine relates to the threshold issue of duty. By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff. Ferrell, Emerging Trends in Premises Liability Law: Ohio's Latest Modification Continues to Chip Away at Bedrock Principles (1995), 21 Ohio N.U. L.Rev. 1121, 1134. Even under the Restatement view, we believe the focus is misdirected because it does not acknowledge that the condition itself is obviously hazardous and that, as a result, no liability is imposed."
 {¶ 25} We thus adhere to the Armstrong decision and examine this case under this doctrine of law. *Page 8 
 {¶ 26} Although appellant acknowledged throughout his deposition that it was January and winter in Ohio, and some snow was on the ground, he had no specific recollection of the condition of the mall parking lot that he had traversed before entering the mall. Campbell depo. at 23, 41-43, 45. Appellant did recollect that nothing obstructed him when he traversed the concrete entrance. Id. at 45. Appellant described his fall as follows:
 {¶ 27} "A. I walked through the second set of doors and I walk off whatever you entered the second, the mat as you said there was at there. I walked through both doors, walked off the mat and took a few steps or so better and all of a sudden I just-like my feet just came up from up underneath me.
 {¶ 28} "Q. Okay.
 {¶ 29} "A. And I was trying to not fall, like you kind of walking on water, you know. And, you know, you can't walk on water, and try to hold myself up and I fell. I kind of went up in the air and, boom, came down.
 {¶ 30} "* * *
 {¶ 31} "Q. At any time did you see any of the conditions you've previously told me about, the water, the wetness on the floor or the matting before you got to the linoleum floor?
 {¶ 32} "A. No. And no. I mean, I walked in the store, walked through going into the, into the Finish Line. I didn't see anything that would have led me to believe that it was, you know, a bunch of water there or something and I should take a little extra caution or something like that." Id. at 52 and 65, respectively. *Page 9 
 {¶ 33} After appellant fell, he noticed "there was water all over the place there." Id. at 61. It is uncontested that the area of the fall was right off the two entrance doors and the two door mats. Id. at 52-53, 62.
 {¶ 34} In her affidavit, appellant's wife, Tracie Campbell, stated three people who had entered the mall before her "slipped on some water which had accumulated near the mats which were just inside the mall entrance." See, Tracie Campbell Affidavit at ¶ 3, attached to Appellant's Brief as Plaintiff's Exhibit C. Mrs. Campbell took her children to the Finish Line store, and then specifically returned to the front entrance to warn her husband about the water on the floor. Id. at ¶ 6.
 {¶ 35} Upon review, we find under the Armstrong mandate that the trial court did not err in finding the water was open-and-obvious and a result of natural accumulation of snow and ice.
 {¶ 36} Assignment of Error I is denied.
 II {¶ 37} Appellant claims the trial court erred in striking paragraph 16 of his affidavit. We disagree.
 {¶ 38} Striking an affidavit or a portion thereof lies in the trial court's sound discretion. Hicks v. Toledo Blade Co., Lucas App. No. L-03-1317, 2004-Ohio-5241. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983) 5 Ohio St.3d 217.
 {¶ 39} Appellant argues his statements made during his deposition did not contradict his statement in paragraph 16 which states the following: *Page 10 
 {¶ 40} "As I walked to the front entrance of the Defendant's facility, there was no snow or ice on the pavement and though it had snowed that day, it was not snowing when I walked through the parking lot." See, Fred Campbell Affidavit, attached to Appellant's Brief as Plaintiff's Exhibit B.
 {¶ 41} In his deposition at 41-42, appellant stated the following:
 {¶ 42} "Q. So when you pulled up to the mall on the blacktop, is it your testimony that it was clean?
 {¶ 43} "A. Yeah. It seemed fine. I mean, I walk.
 {¶ 44} "Q. No snow or snow?
 {¶ 45} "A. There was snow out there, you know.
 {¶ 46} "Q. When you say "out there," in piles or actually laying on the street?
 {¶ 47} "A. I don't know for sure at the time.
 {¶ 48} "Q. Do you know if it was wet or dry?
 {¶ 49} "A. I'm assuming it was possibly wet."
 {¶ 50} In his deposition, appellant claimed he did not know and in paragraph 16 of his affidavit he claimed there was no snow or ice on the pavement. Upon review, we find the trial court did not err in striking paragraph 16.
 {¶ 51} Assignment of Error II is denied. *Page 11 
 {¶ 52} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, P.J.
Wise, J. and
 Edwards, J. concur. *Page 12 
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. *Page 1